Fred P. TERRY, Plaintiff-Appellee
Cross-Appellant,

v.

RAYMOND INTERNATIONAL, INC.,
Defendant-Appellee,

v.

MANITOWOC ENGINEERING COMPA-
NY, Defendant-Appellant
Cross-Appellee.

No. 79–1227.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 8, 1981.

Rehearing and Rehearing En Banc
Denied Jan. 6, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Chester Francipane, Wayne H. Scheuermann, Metairie, La., for defendant-appellant cross-appellee.

Michael X. St. Martin, Danny J. Lirette, Houma, La., Robert M. Contois, Jr., Warren M. Schultz, Jr., New Orleans, La., for plaintiff-appellee cross-appellant.

Before GOLDBERG, CHARLES CLARK and REAVLEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

This case arises from injuries suffered by Fred P. Terry during the installation of a crane on a petroleum production platform twenty-five miles off the coast of England. Manitowoc Engineering Company, the manufacturer of the crane, argues that the court below lacked personal jurisdiction over the company, that maritime law, not Louisiana law, should have determined the rights of the parties, and that the evidence did not support the jury's verdict. Terry cross appeals, arguing that the court below should have awarded him interest as of the date of judicial demand, as required by Louisiana law. We hold that the district court had personal jurisdiction over Manitowoc, that the court correctly apportioned liability under Louisiana law, and that there was ample evidence to support the jury's verdict. We vacate the trial court's award of interest and hold that interest must be awarded as of the date of judicial demand.

I.

Terry was employed by Raymond International as a seaman aboard the SARITA, a workship servicing offshore platforms in the North Sea. Raymond, a "rigging" company with expertise in the construction of offshore platforms, was under contract with Phillips Petroleum Company to convert a Phillips drilling platform to a production platform. Terry and the SARITA were assigned to this project, which required, inter alia, the installation of two Manitowoc Seacrane 70 cranes. The cranes were purchased by Phillips from A. Long, a British company which dealt in Manitowoc products. Manitowoc sponsored training programs in which A. Long personnel were trained in the service and use of Manitowoc products. Jack Beirne, an A. Long employee who had attended such programs, was sent to the platform to supervise the erection of the cranes. When Beirne arrived on the platform, however, Raymond personnel already had set the cab of the crane on its pedestal. As a result, Beirne was faced with the problem of mounting a 13-ton counterweight on the cab of the crane while the cab was fixed some 20 feet above the deck of the platform.

Under a plan devised by Raymond personnel and known to Beirne, Raymond attempted to mount the counterweight by hoisting it on cables attached to an A-frame gantry which projected from the roof of the cab directly above the location of the counterweight. This method of mounting the counterweight was approved by Manitowoc for a land-based Manitowoc crane, but it was not approved for the Seacrane 70. Some ten minutes after the hoisting operation began, the A-frame gantry collapsed, crushing Terry.

Terry brought suit against Raymond and Manitowoc in the United States District Court for the Eastern District of Louisiana. The complaint alleged both diversity and admiralty jurisdiction. Manitowoc, a Wisconsin corporation with no agent for service of process in Louisiana, was served by letter to its Wisconsin headquarters. Raymond filed a third-party complaint against Manitowoc, arguing that Manitowoc was liable to Raymond for any sums owed by Raymond to Terry. Service then was made on Elmer Nagel, Manitowoc's sole employee in Louisiana. Nagel was a maintenance employee who serviced Manitowoc cranes used

in the Louisiana area. Manitowoc made a timely objection to the personal jurisdiction of the court, but the district court denied the company's motion to dismiss.

The primary issue at trial was whether Raymond or Manitowoc was responsible for the accident. Raymond argued that the Seacrane 70 was defectively designed and that Manitowoc was negligent in failing to warn users that the A-frame gantry could not be used to mount the counterweight. Raymond's witnesses testified that erection of the crane presented an engineering problem with no satisfactory solution, and that minor design modifications would have enabled the gantry to support the counterweight. They also suggested that Manitowoc's training program for A. Long employees should have alerted the trainees to the danger of using the gantry to hoist the counterweight. According to Manitowoc, however, Raymond's misuse of the Seacrane 70 was the sole cause of the accident. Manitowoc argued that the gantry was not designed to support the counterweight, and that Raymond should have known that using the gantry as a purchase for hoisting the counterweight into place was unreasonably dangerous. A jury found that Raymond was sixty percent responsible for Terry's accident and that Manitowoc was forty percent responsible. It awarded Terry a total recovery of 1.5 million dollars. Raymond chose not to appeal and settled with Terry for 750,000 dollars.

## II.

■ Our analysis of personal jurisdiction is based on a combination of two elements, amenability to jurisdiction and service of process. By amenability we refer to the substantive reach of a forum's jurisdiction. Service of process is the physical means by which jurisdiction is asserted. These elements are related but distinct. Both service and amenability must be present to authorize a district court to adjudicate the rights of the parties. Because amenability has both a state law and federal constitutional significance, personal jurisdiction of the district court over Manitowoc must be determined by the use of three tests: (1) assertion of jurisdiction by the law of the forum, (2) conformity of the law with the Constitution, and (3) authority for the means of service of process. Under the Federal Rules of Civil Procedure, either federal or state methods of service are authorized. *See* Fed.R.Civ.P. 4. If the law of the forum does not authorize the means by which service on a party has been accomplished, the court lacks personal jurisdiction over the party even though the party is amenable to the court's jurisdiction.

■ In a diversity case, the amenability of a nonresident party is determined under a two-part test. First, the long arm statute of the forum state must assert jurisdiction over the defendant for the cause of action at issue in the suit. This question is governed by state law. *E. g., Standard Fittings Co. v. Sapag, S. A.,* 625 F.2d 630, 636 (5th Cir. 1980); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir. 1973). Second, the exercise of personal jurisdiction over the defendant must be consistent with the due process clause of the fourteenth amendment. This inquiry proceeds under federal law, and consists of deciding whether the defendant has minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101 (1945); *see also Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489 (5th Cir. 1974).

The contours of amenability in non-diversity cases are more fluid. Federal statutes have effect throughout the United States, and thus assertion of "federal long arm jurisdiction" arises only in the context of jurisdiction over nonresident aliens or the extraterritorial assertion of American law. *Cf. Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 704–05, 82 S.Ct. 1404, 1413, 8 L.Ed.2d 777, 787 (1962); *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 355–56, 29 S.Ct. 511, 512, 53 L.Ed. 826, 831–832 (1909). Some commentators have suggested that the due process clause

of the fifth amendment imposes upon the personal jurisdiction of the federal courts restrictions similar to those imposed on state courts under the fourteenth amendment. *See* Foster, *Long-Arm Jurisdiction in Federal Courts,* 1969 Wis.L.Rev. 9, 36 (1969). As this court has observed, "[a]lthough the propriety of service issuing from a federal court need not necessarily be tested by the same yardstick as is the constitutional limitation upon service of process from a state court, the latter standard provides a helpful and often used guideline." *Time, Inc. v. Manning,* 366 F.2d 690, 694 (5th Cir. 1966). Strict federal venue requirements, however, have made it unnecessary to develop a judicial doctrine of the limits of personal jurisdiction in federal cases. Thus, as a practical matter, the most significant restraint on the personal jurisdiction of federal courts in federal cases is service of process, the third part of the three-part test.

█ It is settled that Congress may provide for nationwide service of process if it chooses to do so. *See Robertson v. Railroad Labor Board,* 268 U.S. 619, 622, 45 S.Ct. 621, 622, 69 L.Ed. 1119, 1121 (1925). In fact, Congress has permitted nationwide service in several specialized statutes. *See, e. g.,* 28 U.S.C. § 2361 (1978) (interpleader); 15 U.S.C. §§ 5, 22, 25 (1973) (federal antitrust laws); 15 U.S.C. § 77v(a) (1971) (federal securities laws). However, Congress has not authorized general process from the district courts to run throughout the nation. Under Rule 4, federal process can be served outside the state in which the district court sits only under an explicit provision in a federal statute, under state procedures, or under the provisions for 100-mile "bulge" service.

### III.

Manitowoc argues that the federal district court in the Eastern District of Louisiana lacked personal jurisdiction over the company on any cause of action asserted by Terry or Raymond. It does not contend that its contacts with Louisiana are inadequate to meet the fairness test under *Inter-*

*national Shoe* and its progeny. Instead, Manitowoc argues that the Louisiana long arm statute does not assert jurisdiction over it because Terry's cause of action does not arise out of Manitowoc's activities in Louisiana. Manitowoc phrases its argument in terms of service of process, but it is clear that the company's real objection is that it is not amenable to jurisdiction under the Louisiana long arm law, and that the second element of the three-part test is missing.

Terry's lawsuit in the court below consisted of three primary claims. Terry's claim against Manitowoc charged that Manitowoc's crane was defective and that Manitowoc had been negligent. This is a tort claim brought under diversity jurisdiction. Raymond's third party complaint against Manitowoc also was based strictly on a tort theory. Terry's claim against Raymond, however, was brought under the Jones Act and general maritime law. This cause of action, of course, is a federal claim. Thus, although Manitowoc's liability arises exclusively from Louisiana tort law, the case was brought under both diversity and federal case jurisdiction.

█ In a case brought under both diversity and federal case jurisdiction, the defendant's amenability to process under state law, which could be critical in a pure diversity based action, is irrelevant. In *Lone Star Package Car Co. v. Baltimore and O. R. Co.,* 212 F.2d 147, 155 (5th Cir. 1954), we held that a federal, not a state, standard governs amenability to personal jurisdiction where the case arises under both diversity and federal question jurisdiction. In *Lone Star,* the B & O Railroad was served with a third party complaint based on diversity jurisdiction and on the Carmack Amendment, a federal statute. The court acknowledged that, under the traditional two-step approach, amenability would be measured first under the state long arm statute and then under the Constitution. According to the court, however, "[t]he indicated approach seems to us basically erroneous where the power of the federal court is invoked not solely on the

ground of diversity of citizenship, but can be independently sustained, as in this case, on the ground that the matter in controversy arises under the Constitution, laws or treaties of the United States." 212 F.2d at 153–54. In such cases, according to the court, the amenability of the parties was to be measured under "basic principles of fairness," the federal standard adopted in *International Shoe. Id.* at 155. Here, it is evident that Manitowoc has minimum contacts under the *International Shoe* test. Thus, *Lone Star* forecloses Manitowoc's argument that it is not amenable to personal jurisdiction in the Eastern District of Louisiana.

We recognize that Manitowoc's liability in this case arises only from Louisiana tort law. It may appear incongruous that Manitowoc becomes amenable to personal jurisdiction under a federal standard merely by virtue of Terry's Jones Act claim against Raymond when the only basis for Manitowoc's liability must arise under state law, but this is the precise holding of *Lone Star.* That case involved a third party complaint and derivative liability under state contract law, *see* 212 F.2d at 152. *Lone Star* mandates our conclusions here that federal law determines whether Manitowoc is amenable, and that Manitowoc is amenable under federal law.

The only remaining inquiry under the three-part test for personal jurisdiction is whether there was proper service of process on Manitowoc. Under Rule 4(d)(3) of the Federal Rules of Civil Procedure, service on a corporation may be accomplished by delivering copies of the summons and complaint to "a managing or general agent." The parties have devoted most of their attention to whether service on Elmer Nagel was adequate service under this provision. Raymond notes that the *Lone Star* case itself held that "[i]f a corporation's business is so substantial as to render the corporation amenable to suit in the state, its principal agent in charge of activities within that state meets the test of a 'managing agent.'" 212 F.2d at 152. Because Nagel was Manitowoc's only employee in Louisiana at the time of the suit, Raymond con-

tends that he clearly was "in charge of activities within that state," and thus is a "managing agent" under *Lone Star.*

Although the language of the *Lone Star* test for a managing agent seems to extend to Nagel, it is not clear that the rationale behind the language also is applicable. Nagel was the lone Manitowoc employee in Louisiana, but most of Manitowoc's business in Louisiana was conducted from the company's Houston office. Thus, Nagel was not in charge of the activities which gave rise to Manitowoc's amenability in the state. Moreover, it is not clear that Nagel exercised the supervisory functions required for "managing agent" status under Rule 4(d)(3). For these reasons, we express no view as to whether Nagel was a "managing agent" within the meaning of Rule 4(d)(3).

■ Under Rule 4(d)(7), the plaintiff also may serve the defendant "in the manner prescribed by the law of the state in which the district court is held." Article 1261(2) of the Louisiana Code of Civil Procedure permits service on a corporation "[b]y personal service on any employee of suitable age and discretion." Nagel is such an employee and we hold that service on Nagel was proper under this provision. Although Manitowoc renews its argument that Louisiana law limits the state's long arm jurisdiction to causes of action arising from contacts with the state, this objection is beside the point. The company's amenability to process is established under the federal standard of *International Shoe.* Federal law eliminates any need to determine whether Manitowoc was amenable under the Louisiana long arm statute. The only component of personal jurisdiction we must test is service of process. Here, service was accomplished under Rule 4(d)(7), "in the manner prescribed by state law." Because Manitowoc was amenable to service in Louisiana under the federal standard of amenability, and because service was proper under Rule 4(d)(7), Manitowoc was brought within the personal jurisdiction of the district court in this action.

## IV.

■ Manitowoc also challenges the jury's verdict that the company was responsible for Terry's injuries. Manitowoc argues that the A-frame gantry was not designed to support the counterweight, and that this fact was apparent to Raymond, a sophisticated "rigger" of offshore platforms. In Manitowoc's view, a warning would have been futile to prevent such willful misuse of the Seacrane 70, and thus Raymond's negligence was the sole cause of the accident.

Manitowoc's argument is a strong one but the jury was not persuaded. It found that the company was negligent, that the Seacrane 70 was defective and in normal use at the time of the accident, and that Manitowoc was forty percent responsible for Terry's injuries. The standard for appellate review of a jury's finding is clear and exacting. No matter how persuasive we might find Manitowoc's arguments, this court is not at liberty to set the jury's verdict aside if that verdict could have been reached by reasonable men in the exercise of impartial judgment. *See Williams v. Insurance Co. of North America*, 634 F.2d 813, 815 (5th Cir. 1981); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

■ The record demonstrates that the jury's verdict cannot be disturbed. There was testimony that Beirne, the A. Long employee sent to supervise the erection of the crane, had attended Manitowoc training sessions on several occasions but never was warned that the readily accessible gantry on this model of its cranes could not be used to mount the counterweight. The jury reasonably could have concluded from this testimony that, having undertaken to train Beirne, Manitowoc was negligent in failing to warn him of such a significant danger, and that Beirne, in his superior capacity, would have protested that Raymond's plan was unsafe. Witnesses also testified that inexpensive extensions of the webbing in the gantry would have permitted the structure to support the counterweight and that field assembly of the Seacrane 70 presented a problem to which there was no satisfactory solution. This proof provided an ample basis for the jury's finding that the Seacrane 70 was defective and in normal use at the time of the accident. The jury's finding that Manitowoc was forty percent responsible for Terry's injuries must be affirmed.

■ Manitowoc also contends that the jury's award of damages was excessive. This court may not reject a jury's determination of damages unless the verdict "is so gross as to be contrary to right reason." *Hatfield v. Anthony Forest Products Co.*, 642 F.2d 175, 178 (5th Cir. 1981). Here, there was testimony that Terry's lost earnings exceeded $600,000. Moreover, the evidence showed that Terry's injuries were severe and that his legs are permanently disabled. While the jury's award was magnanimous, we cannot say it was contrary to right reason. Accordingly, we affirm the jury's award of damages.

## V.

The jury found that Raymond was responsible for sixty percent of the accident and that Manitowoc was responsible for forty percent. The trial court applied Louisiana law, however, and held that each defendant was liable for fifty percent of the judgment. Manitowoc argues that federal maritime law should have determined the liability of the parties, and that federal law would have required implementation of the jury's apportionment of liability.

■ Manitowoc's argument is appealing, especially in view of our conclusion that the court below had personal jurisdiction over Manitowoc solely because of the federal maritime claim validly asserted against Raymond by its seaman-employee, Terry. Nevertheless, the cases make clear that federal maritime law does not apply to accidents which occur on offshore petroleum platforms. In *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 366, 89 S.Ct. 1835, 1843, 23 L.Ed.2d 360, 370 (1969), the Supreme Court held that offshore petroleum platforms were artificial islands, and that accidents occurring on these islands were not within federal admiralty

jurisdiction. It is true, as Manitowoc points out, that *Rodrigue* was based in part on the principle that offshore platforms on the Outer Continental Shelf of the United States were subject to the Outer Continental Shelf Lands Act (Lands Act), 43 U.S.C. § 1331 *et seq.*, and that adjacent state law applied under section 4 of the Act, 43 U.S.C. § 1333. *See* 395 U.S. at 355, 89 S.Ct. at 1837, 23 L.Ed.2d at 364. The important part of the *Rodrigue* holding for present purposes, however, is that accidents on offshore platforms, wherever they are located, are not within maritime jurisdiction as defined in the Death on the High Seas Act, 46 U.S.C. § 761 *et seq. See id.* at 366, 89 S.Ct. at 1842, 23 L.Ed.2d at 370. As we observed in *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 272 (5th Cir. 1974), *Rodrigue* made clear that "under traditional jurisdictional principles, maritime law is inapplicable to platform-based accidents." The rationale for this rule, according to the *Dearborn* court, is that island-platforms are to be viewed as extensions of the sub-soil unless they are erected as navigational aids. *See id.* at 272 n.18. Thus, even if Manitowoc is correct in its assertion that the Lands Act does not automatically incorporate Louisiana law as the law governing an offshore platform in the North Sea, *Rodrigue* nevertheless makes clear that federal maritime law also is inapplicable.

Recent developments in admiralty law confirm that an accident on an offshore petroleum platform is not subject to federal maritime law. In *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454, 467 (1972), the Supreme Court held that airplane accidents are not within federal admiralty jurisdiction unless the accident bears a significant relationship to traditional maritime activities. *Executive Jet* evinces a general inclination to measure the scope of admiralty jurisdiction by reference to the nature of the activities involved in a particular case instead of relying exclusively on the traditional locality test. The same inclination has been expressed in this circuit. *See In re Dearborn Marine Service, Inc., supra,* 499 F.2d at 274–76. Terry's accident occurred on a petroleum platform during activities having little to do with traditional maritime activities. *Rodrigue* clearly establishes that accidents on petroleum platforms are not under maritime jurisdiction. *See* 395 U.S. at 366, 89 S.Ct. at 1842, 23 L.Ed.2d at 370. Accordingly, we hold that federal maritime law does not apply to Terry's accident.

 Our holding that maritime law does not apply to Manitowoc's case leaves unanswered the question what law does apply. The parties and the district court assumed, however, that Louisiana law is applicable if maritime law is not. We see no reason to disagree with this assumption. After *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), diversity tort cases brought in federal court are to be tried under state law. Here, Manitowoc's liability was based exclusively on tort law, even though the court's personal jurisdiction over Manitowoc exists by virtue of Terry's maritime claim against Raymond. Thus, we hold that the district court correctly applied Louisiana law.

 Our decision that Louisiana law applies disposes of the remaining two issues in this appeal. Under Louisiana law, joint tortfeasors are liable *in solido* for their virile shares of the damages awarded to the plaintiff. *See* La.Civ.Code art. 2103; *Shaw v. New York Fire & Marine Underwriters, Inc.*, 252 La. 653, 655, 212 So.2d 416, 418 (1968). A virile share is computed on a pro rata basis among all joint tortfeasors. *Cunningham v. Hardware Mutual Casualty Co.*, La.App., 228 So.2d 700, 705–06 (1969). For this reason, the trial court held that Manitowoc and Raymond each were liable for fifty percent of the judgment awarded to Terry. Manitowoc does not deny that Louisiana law requires the 50–50 apportionment of the judgment, and we affirm the trial court's ruling.

 Louisiana law also provides that interest in tort cases shall run from the date of filing the complaint. La.Rev.Stat. § 13:4203. The trial judge awarded interest as of the date of judgment. Because state law applies, however, interest should be

paid as of the date of judicial demand. *See Canova v. Travelers Insurance Co.*, 406 F.2d 410, 411 (5th Cir. 1969); *New Amsterdam Casualty Co. v. Soileau*, 167 F.2d 767, 772 (5th Cir. 1948).

### VI.

Manitowoc is subject to the personal jurisdiction of the court below because it was amenable to service of process under the federal minimum contacts standard and was served with process under Louisiana procedures as permitted by Rule 4(d)(7). The jury's verdict and award of damages could have been reached by reasonable jurors acting impartially, and they are affirmed. Because Terry's accident occurred on an offshore platform in the North Sea, Louisiana law rather than maritime law properly was used to determine Manitowoc's liability. Under Louisiana law, Manitowoc is liable *in solido* with Raymond for the tort damages awarded to Terry, and is liable for fifty percent of the judgment. The trial court erred, however, in awarding interest as of the date of judgment. Interest should be awarded as of the date of the judicial demand as required by Louisiana law. The judgment is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.