Klaus-Dieter ROHDE, Plaintiff-Appellant,

v.

SOUTHEASTERN DRILLING COMPA-
NY, INC., Continental Oil Company and
Dubai Petroleum Company, Defendants-
Appellees.

No. 81–3128.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1982.

Rehearing Denied March 22, 1982.

Lawrence S. Kullman, New Orleans, La., for plaintiff-appellant.

Ralph E. Smith, New Orleans, La., for defendants-appellees.

Before WISDOM, SAM D. JOHNSON and WILLIAMS, Circuit Judges.

WISDOM, Circuit Judge:

Klaus-Dieter Rohde appeals a district court order denying his suit to recover damages for personal injuries sustained during an oil well blow-out and fire. We affirm the district court's judgment.

## I.

The plaintiff/appellant, Klaus-Dieter Rohde, a German national, was injured on a drilling platform in the Arabian Gulf. The defendants/appellees are Continental Oil Company (Conoco), Dubai Petroleum Company, the owner of the platform and Conoco's wholly-owned subsidiary in the Arabian Gulf, and Southeastern Drilling Company, Inc. (Sedco), the owner of Rig 70. Sedco Rig 70 was at the time of the incident in question located approximately 65 miles offshore from the Emirate of Dubai in the Arabian Gulf. Weatherford-Lamb, formerly Weatherford Oil Tool Middle East, Ltd., the plaintiff's payroll employer, has not been sued in this civil action.

In April, 1973 Weatherford-Lamb, a company specializing in installation and pressure testing of oil field piping, employed and trained Rohde as a service technician, in Hanover, West Germany. On October 1, 1973, the company sent him to work in Dubai, a sheikdom, now a part of the United Arab Emirates, located on the Arabian penninsula. On October 16, 1973, Rohde left Dubai by helicopter for assignment on Sedco Rig 70 on Dubai Petroleum Company's "A" Platform located on the high seas off the coast of the Emirate of Dubai.

The "A" Platform consists of a sub-structure, jacket, and platform deck which were moved by barge and assembled on location. The pilings were driven through the supporting legs of the structure into the floor of the Gulf. It is undisputed that this structure is a fixed platform. This complex of facilities is used to extract oil from the seabed underneath the high seas. After the oil is extracted from the seabed, it is transported to floating storage facilities, and from there to all parts of the world by ocean-going tankers.

The Sedco tool pusher was in overall charge of the rig. However, he had limited authority over Weatherford-Lamb personnel as to general safety and to the manner in which tubing was to be connected. When Rohde arrived on the platform, a Conoco representative told him that they were experiencing some sort of trouble, and that they were not yet ready for the Weatherford personnel to begin work.

At approximately 2:00 A.M. on October 17, 1973, the driller awoke Rohde to get his assistance in unloading Weatherford-Lamb equipment from a supply boat onto the platform. When this chore was completed, Rohde returned to bed until 6:00 A.M. when he began his normal workday with the rig drill crew. He worked until about 10 or 10:30 A.M., when the Sedco driller told him to stop work because of some trouble with the drilling operation.

Shortly thereafter, oil and gas began erupting from the drill hole on the platform. An explosion then occurred which resulted in a severe fire. The explosion turned the oil-soaked Rohde into a human torch while his co-workers tried desperately to pull off his burning clothing. He jumped off the rig into the water which was covered with burning oil. He was rescued and

later flown to a hospital in Dubai. There he received treatment for severe third degree burns over 60 percent of his body. He spent the next year in hospitals in Germany, and is now permanently disabled and disfigured.

On September 28, 1976, the plaintiff filed a suit claiming damages for personal injuries against the defendants. Two of the defendants moved for summary judgment asserting that the plaintiff's claims had prescribed as a matter of Louisiana law. The district court granted the motion and entered judgment in favor of the defendants. Thereafter, Rohde appealed. On November 18, 1980, this court dismissed the appeal because "the order granting summary judgment to two defendants while the case remains pending against another is not final and not appealable." Subsequently, on February 16, 1981, the district court decreed judgment in favor of all the defendants and entered judgment the following day.

Rohde appeals the district court's grant of summary judgment. He alleges that he is a seaman and therefore has a Jones Act claim and a negligence maritime tort claim against the defendants. He contends that this matter is within the maritime jurisdiction of the federal courts so that the maritime doctrine of laches rather than the Louisiana's one-year prescriptive period determines the timeliness of this action. He submits that, alternatively, in exercising its diversity jurisdiction, the district court should have applied the Louisiana conflicts principle of "interest analysis" so as to apply the substantive and procedural law of Dubai which he contends embraces the maritime law and the doctrine of laches.

## II.

■ We agree with the district court's conclusion that the plaintiff cannot establish seaman status under the Jones Act, 46 U.S.C. § 688 et seq. To establish a claim under the Jones Act, the plaintiff must establish an employer-employee relationship with the defendants and status as a seaman. *Cosmopolitan Shipping Co. v. McAllister*, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692. The Jones Act is an employer liability statute which permits recovery by a seaman against his employer for injuries sustained in the course of his employment. As such, the appellant does not satisfy the statutory requisites of the Act. None of the defendants employed the plaintiff. Weatherford-Lamb, an independent contractor, was his employer at the time of his injury.

■ Furthermore, the right of recovery as a seaman under the Jones Act depends upon the nature of the service being rendered and the relationship of that service to the operation of the vessel in navigable waters. *O'Donnell v. Great Lakes Dredge & Dock Co.*, 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596; *Magnolia Towing Co. v. Pace*, 5 Cir. 1967, 378 F.2d 12. Since the circumstances of the plaintiff's injury did not involve any vessel owned, operated, or controlled by the defendants in this litigation, we agree with the district court that the plaintiff is unable to establish seaman status under the Jones Act.

## III.

■ We agree with the district court that an injury sustained on a fixed platform on the high seas does not fall within the admiralty and maritime jurisdiction of the United States courts. The structure upon which Rohde was injured is a fixed platform; pilings were driven through the supporting legs of the structure into the floors of the Arabian Gulf. The Supreme Court has established the principle that such drilling platforms are artificial islands and that accidents occurring on these islands are not within federal admiralty jurisdiction. *Rodrigue v. Aetna Casualty and Surety Co.*, 1969, 395 U.S. 352, at 360, 89 S.Ct. 1835, at 1839, 23 L.Ed.2d 360. It is true, as the appellants point out here, that *Rodrigue* was based in part on the principle that offshore platforms on the outer continental shelf of the United States are subject to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. and that adjacent state law applies under section 4 of the Act, 43 U.S.C. § 1333. But as we said on this

point in *Terry v. Raymond International*, 5 Cir. 1981, 658 F.2d 398, 405 [1]:

> The important part of the *Rodrigue* holding for present purposes, however, is that accidents on offshore platforms, wherever they are located, are not within maritime jurisdiction as defined in the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.* *See id.* [395 U.S.] at 366, 89 S.Ct. at 1842, 23 L.Ed.2d at 370. As we observed in *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 272 (5th Cir. 1974), *Rodrigue* made clear that "under traditional jurisdictional principles, maritime law is inapplicable to platform-based accidents." The rationale for this rule, according to the *Dearborn* court, is that island-platforms are to be viewed as extensions of the sub-soil unless they are erected as navigational aids. *See id.* at 272 n.18.

Therefore, *Rodrigue* is dispositive of the matter.

■ In *Terry* we held that the maritime law was not applicable to an accident on a fixed offshore oil drilling platform located 25 miles off the coast of Great Britain. This court in *Terry* reasoned:

> Recent developments in admiralty law confirm that an accident on an offshore petroleum platform is not subject to federal maritime law. In *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454, 467 (1972), the Supreme Court held that airplane accidents are not within federal jurisdiction unless the accident bears a significant relationship to traditional maritime activities. *Executive Jet* evinces a general inclination to measure the scope of admiralty jurisdiction by reference to the nature of the activities involved in a particular case instead of relying exclusively on the traditional locality

test. The same inclination has been expressed in this circuit. *See In re Dearborn Marine Service, Inc., supra,* 499 F.2d at 274–76. Terry's accident occurred on a petroleum platform during activities having little to do with traditional maritime activities. *Rodrigue* clearly establishes that accidents on petroleum platforms are not under maritime jurisdiction. *See* 395 U.S. at 366, 89 S.Ct. [at] 1842, 23 L.Ed.2d at 370.

The appellant cites two recent Fifth Circuit decisions to support his contention that offshore drilling operations constitute maritime activities. *Boudreaux v. American Workover, Inc.*, 5 Cir. 1981, 664 F.2d 463, and *Pippen v. Shell Oil Co.*, 5 Cir. 1981, 661 F.2d 378. He argues that if "offshore drilling" operations constitute "maritime commerce", it follows that the requisites for maritime jurisdiction prescribed in *Executive Jet* are satisfied where the incident occurs on a fixed drilling platform outside the jurisdiction of the Outer Continental Shelf Lands Act. We disagree. The two cases cited by the appellant are inapposite in this context. They involve eligibility for workmen's compensation under the Longshoremen's & Harbor Workers' Compensation Act, "LHWCA", 33 U.S.C. §§ 901 et seq., where an injury occurs on a pier, platform, or other structure. The Act requires that a plaintiff meet a two-fold test of situs "upon navigable waters of the United States" [2] and status of "maritime employment". Both employees in the two cases satisfied the geographical requirements, so the courts had to determine the question of maritime employment. However, eligibility for workmen's compensation under the Act, where occurring on a pier, platform, or other structure, is not the same as the application of general maritime jurisdiction. This

---

**1.** While *Rohde* was being argued, *rehearing and rehearing en banc* was requested by the appellant in the *Terry* case. This court denied that request on January 6, 1982.

**2.** A 1972 amendment to the Longshoremen's and Harbor Workers' Act extended the geographical area of activity applicable to workers engaged in maritime employment and broadened the coverage to include:

injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel).
33 U.S.C. § 903(a).

court made that same distinction in *Pippen*, 661 F.2d 378 n.10.[3]  *See Sohyde Drilling & Marine Co. v. Coastal Gas Producing Co.*, 5 Cir. 1981, 644 F.2d 1132.

In short, this case is controlled by *Rodrigue* and *Terry* in that the incident in question occurred outside of the navigable waters of the United States, *i.e.*, on the high seas, and on a fixed platform.

## IV.

The only basis for federal jurisdiction available to Rohde is then diversity jurisdiction pursuant to 28 U.S.C. § 1332. The district court, in exercising this jurisdiction, properly applied the Louisiana law including Louisiana's choice of law principles. *Erie Railroad Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; *Klaxon v. Stentor Electric Manufacturing Co.*, 1941, 313 U.S. 487, 489, 61 S.Ct. 1020, 85 L.Ed. 1477. Louisiana courts customarily apply the law of the forum, *i.e.*, Louisiana law, to the issue of limitations. An exception is that a Louisiana court will apply a foreign statute of limitations where it is an inherent part of the substantive law giving rise to the right of action. *Kozan v. Comstock*, 5 Cir. 1959, 270 F.2d 839. The appellant contends that to determine the applicable substantive law, a Louisiana court would attempt to analyze what law had the greatest "interest" or contacts with the issues involved. *See Jagers v. Royal Indemnity Co.*, La. 1973, 276 So.2d 309. The appellant argues then that this would be the law of Dubai, the adjacent state, which would apply the principles of maritime law, including laches, to the tort committed on a fixed platform located on the high seas outside its territorial waters. We reject this argument, as we did in *Wright v. Fireman's Fund Insurance Co.*, 5 Cir. 1976, 522 F.2d 1376. Here, as in *Wright*, we find that the conflict of law principles announced in *Jagers* were not intended to apply to questions of prescription or statute of limitations. Hence, the law of Louisiana applies in this case. Article 3532 of the Louisiana Civil Code provides that actions for damages resulting from offenses or quasi-offenses are prescribed by one year. Since this suit was not instituted within one year after the cause of action arose, the Louisiana law of prescription bars Rohde from maintaining this action. It is not necessary, then, for this court to reach the question what substantive law was applicable on the platform in question. *See Huson v. Otis Engineering Corp.*, 5 Cir. 1970, 430 F.2d 27.

We, therefore, AFFIRM the district court's judgment.

---

**3.**  In *Sohyde Drilling & Marine Co. v. Coastal Gas Producing Co.*, 644 F.2d 1132 (5th Cir. 1981), the Court held that a suit for property damage arising out of a blowout of a high pressure gas well was outside the Court's admiralty jurisdiction because the incident lacked a substantial maritime relationship.

In large part, *Sohyde Drilling* is inapposite to the issue before this Court—whether Pippen was engaged in maritime employment at the time of his injury and thus satisfies the status test of the LHWCA.... The factors considered by the *Sohyde Drilling* Court to determine whether the wrong bore a significant relationship to maritime activity for purposes of the Admiralty Extension Act have not been applied in cases that considered whether an employee was engaged in maritime employment for purposes of the LHWCA.

*Pippen v. Shell Oil Co.*, 5 Cir. 1981, 661 F.2d 378, 384 n.10. The converse of this distinction is equally correct and applicable.