693 F.2d 581
 Jean LAPEYROUSE, Individually and as Temporary
Administratrix of the Estate of Iry Joseph
Lapeyrouse, Jr., etc., Plaintiff-Appellant,
v.
TEXACO, INC., et al., Defendants,
J & K Rig Construction Co., Inc., Defendant-Appellee.
Donald Ray STEWART, et ux., Plaintiff-Appellants,
v.
TEXACO, INC., et al., Defendants,
J & K Rig Construction Co., Inc., Defendant-Appellee.
Peter H. CUMMINGS, IV, et al., Plaintiffs-Appellants,
v.
TEXACO, INC., et al., Defendants,
J & K Rig Construction Co., Inc., Defendant-Appellee.
 No. 81-2039.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 17, 1982.
 
 Newton B. Schwartz, P.C., Houston, Tex., for plaintiffs-appellants.
 Royston, Rayzor, Vickery & Williams, Ben L. Reynolds, John M. Elsley, Houston, Tex., for defendant-appellee.
 Baker & Botts, Randy J. McClanahan, Houston, Tex., for Texaco, Inc.
 Don Weitinger, L. Keith Slade, Weitinger, Steelhammer & Tucker, Houston, Tex., for International Hammer Services, Patterson Srvs., & Rollins, Inc.
 James R. Sutterfield, New Orleans, La., for J & K Rig Construction Co.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GARZA, TATE and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge.
 
 
 1
 This case, previously before the Court, was remanded, 670 F.2d 503 (5th Cir.1982), when the issue of the timeliness of the appeal was noticed sua sponte. The district court now having made the necessary findings to establish the timeliness of the appeal, we review the merits.
 
 Background Facts
 
 2
 This appeal arises from a suit brought in the Southern District of Texas by employees and decedents of employees of International Hammer Services Company (Hammer) against Hammer, Texaco, Circle Bar Drilling Company, J & K Rig Construction Company (J & K), and several peripheral defendants.[1] Appellants and deceased relatives of appellants worked off the Louisiana coast as members of the casing crew on a well owned by Texaco aboard a drilling barge owned by Circle Bar. On August 22, 1979, the well derrick on the barge collapsed, resulting in the death or injury of several members of the crew.
 
 
 3
 During the resultant litigation in federal court, J & K filed a motion pursuant to Fed.R.Civ.P. 12(b)(2) claiming that the court lacked in personam jurisdiction over it. The district court granted the motion and entered a judgment dismissing all claims against J & K. By contrast, in a concurrently pending Texas state court suit arising from the same accident,[2] the 164th District Court for Houston denied J & K's analogous motion for a special appearance or motion to dismiss for want of personal jurisdiction.[3]
 
 
 4
 Appellants were Texas residents at the time of the accident. The injured or deceased appellants were hired in Houston, Texas and transported to Louisiana to work on the rig Circle Bar II. All defendants in appellants' suit are subject to Texas jurisdiction, except for the question of jurisdiction over J & K,[4] a small, closely-held corporation, incorporated under the laws of Louisiana. J & K's business involves the assembly and dismantling of drilling rigs. In the immediate case, the derrick assembled was a floating, moveable rig which was erected in 1979 in the coastal waters of Louisiana, where the accident occurred.
 
 I. Timeliness of the Appeal
 
 5
 In our earlier decision in this case, we remanded to the district court for a determination of whether the motion for rehearing below was made pursuant to Fed.R.Civ.P. 59(e) or to Fed.R.Civ.P. 60(b). The necessity for remand arose because it was unclear whether appellant's motion for rehearing was filed, as it normally would be, under Rule 59. If so, and if it was timely filed, it would have effectively nullified the earlier notice of appeal, and, under Fed.R.App.P. 4(a)(4), we would have been without jurisdiction to hear the appeal, see Portis v. Harris County, 632 F.2d 486, 487 (5th Cir.1980). The district court found, however, that the motion for rehearing was filed under Fed.R.Civ.P. 60(b). Such a motion for rehearing does not nullify an earlier notice of appeal. We find, upon application of the appropriate standard of review, that the district court did not abuse its discretion in reaching its conclusions, and we affirm this holding.
 
 
 6
 Although this Court, in remanding this case, recognized that a motion for rehearing is normally filed under Rule 59,[5] we held that the motion at issue "could also be construed ... as one filed pursuant to Fed.R.Civ.P. 60(b)(6)." The district court determined that the motion had been made pursuant to Rule 60(b),[6] relying upon subsection (1) rather than the catch-all subsection (6).
 
 The district court reasoned:
 
 7
 The first substantive statement in the motion for rehearing is a claim by the Plaintiffs that another argument was available to movants before judgment but was not made "because the Plaintiffs were satisfied that jurisdiction in this court was sustainable on the [grounds] heretofore urged...." This clearly is an argument that through "mistake, inadvertance ... or excusable neglect" of counsel all relevant legal issues were not presented to the Court so that justice might be done. Rule 60(b)(1). Conversely, the motion does not claim newly discovered evidence which could supply the basis for a motion within ten days of judgment under Rule 59. The evidence of general business contacts by J & K in Texas was known to all parties before the Court's order of dismissal was entered and therefore was not new evidence. The Court finds that the movants' remaining arguments relating to convenience and conservation of judicial resources can be as fairly characterized as an appeal to the Court's traditional equitable powers under Rule 60 as they can be characterized as an invocation of the Court's authority under Rule 59. See Notes of Advisory Committee, Rule 60.
 
 
 8
 We find the district court's characterization of the motion to be a reasonable one, and hence well within its broad discretion to act pursuant to Fed.R.Civ.P. 60. See, e.g., Hand v. United States, 441 F.2d 529, 531 (5th Cir.1971). Although this Court had suggested possible reliance on Rule 60(b)(6), we do not find any abuse of discretion in the district court's reasonable reliance upon the more specific Rule 60(b)(1).[7]
 
 II. Personal Jurisdiction
 
 9
 The district court dismissed appellee J & K from appellants' suit, upon J & K's timely objection pursuant to Fed.R.Civ.P. 12(b), finding a lack of personal jurisdiction under the Texas long-arm statute, Tex.Civ.Code Ann. art. 2031b (Vernon 1970), and finding also that due process would not permit the exercise of personal jurisdiction even if the state statute applied.[8] We reverse.
 
 
 10
 Personal jurisdiction is traditionally determined by the use of three tests: (1) assertion of jurisdiction by the law of the forum; (2) conformity of the law with the Constitution; and (3) authority for the means of service of process. The first two tests determine a defendant's amenability to jurisdiction while the third test, distinct though related, gauges whether that amenability was asserted through the proper means. "If the law of the forum does not authorize the means by which service on a party has been accomplished, the court lacks personal jurisdiction over the party even though the party is amenable to the court's jurisdiction." Terry v. Raymond International, Inc., 658 F.2d 398, 401 (5th Cir.1981), rehearing and rehearing en banc denied, 667 F.2d 92 (5th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982).
 
 
 11
 It is well-established that amenability to jurisdiction in a federal court, sitting pursuant to diversity jurisdiction, exists to the extent permitted a state court within the state in which the federal court sits. See Terry v. Raymond International, Inc., supra (and cases cited therein); Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co., 623 F.2d 375, 377 (5th Cir.1980) (and cases cited therein). This amenability rule translates into the first two of the three tests outlined above. First, the forum state long-arm statute must assert jurisdiction over the nonresident defendant. This question is governed by state law. See, e.g., Terry v. Raymond International, Inc., supra. Second, the exercise of personal jurisdiction must be consonant with "traditional notions of fair play and substantial justice" and the nonresident defendant must have sufficient "minimum contacts" with the forum state so as not to offend the due process of law clause of the Fourteenth Amendment. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); Product Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir.1974). This latter inquiry proceeds under federal law.
 
 
 12
 In a federal question case, however, such as the one sub judice,[9] the "contours of amenability ... are more fluid" since a federal standard alone governs amenability. Terry v. Raymond International, Inc., supra, 658 F.2d at 401. This Circuit has held, in the few cases in which this issue has been presented, that the otherwise-threshold inquiry of whether the state long-arm statute asserts jurisdiction over the defendant sought to be joined in suit, is irrelevant "where the power of the federal court ... can be independently sustained ... on the ground that the matter in controversy arises under the Constitution, laws or treaties of the United States." Lone Star Package Car Co. v. Baltimore & O.R. Co., 212 F.2d 147, 153-54 (5th Cir.1954). See Terry v. Raymond International, Inc., supra.[10]
 
 
 13
 In undertaking, then, to apply the sole test of amenability to jurisdiction in a federal question case, the test of constitutionality, we begin by noting that the appropriate inquiry lies with the due process of laws clause of the Fifth Amendment. While the limitations imposed in the Fifth Amendment are similar to those imposed upon the state courts under the Fourteenth Amendment, they are not necessarily identical. Cf. Time, Inc. v. Manning, 366 F.2d 690, 694 (5th Cir.1966) (propriety of service issuance from a federal court need not necessarily be tested by the same yardstick as the constitutional limitation upon service of process from a state court; but the latter standard proves a helpful and often used guideline).
 
 
 14
 Different interests and factors also come into play when a federal, rather than state, forum is seeking to assert jurisdiction over a federal claim. For example, the Supreme Court's concern that states "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal forum" is not properly invoked when jurisdiction in a federal court is asserted. World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. at 292, 100 S.Ct. at 564. Similarly, the Supreme Court's consideration of various factors as relevant to a determination of the fairness of exerting jurisdiction take on new meaning in the context of a federal forum interpreting its own laws.[11] Thus, while we are aided by the constructions provided the due process clause under the Fourteenth Amendment in determining whether in personam jurisdiction may be asserted, we must give weight to the differences occasioned by the federal nature of both the forum and claim in determining whether the due process clause of the Fifth Amendment permits exercise of in personam jurisdiction in this case.
 
 
 15
 Before deciding the constitutional issue, we must note that J & K was properly served. While the Texas long-arm statute has no bearing upon our determination of J & K's amenability to jurisdiction, it is controlling as to the question of whether service of process was properly effected so as to permit the assertion of that jurisdiction.[12] However, in light of the Texas Supreme Court's recent decision in Hall v. Helicopteros Nacionales De Colombia, S.A. ("Helicol"), 638 S.W.2d 870 (Tex.1982), which held that the long-arm provision of Article 2031b extends jurisdiction to the limits of due process, the effectiveness of the service of process upon J & K, in accordance with the state long-arm statute, hinges upon the same due process test as does the amenability of J & K to jurisdiction.[13]
 
 
 16
 We turn, then, to the single inquiry at hand. We find that the district court erred in concluding that due process required dismissal of J & K from appellants' suit. The nature and extent of J & K's contacts with the forum state, Texas, make it eminently clear that J & K may properly be subjected to suit in Texas in accordance with "traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[14]
 
 
 17
 J & K maintained fairly substantial general contacts with Texas. During a two-year period, from 1978 to 1980, J & K performed work in Texas on fifteen separate occasions, within seven different Texas cities, and involving contracts with at least six Texas corporations. The activities resulted in 7,253 manhours of work within the state.[15] Although the magnitude of the revenues derived therefrom, $215,384.50, may reflect anywhere from 6% to 20.2% of J & K's gross revenues, as contended by J & K and appellants, respectively, we do not find that the specific percentage of general business activity in Texas controls the question before us. Remand to the district court of this undetermined percentage is unnecessary. In light of J & K's other general contacts with Texas and its more specific connection with Texas in the immediate litigation, we find that regardless of whether J & K's Texas-derived revenues were closer to the 6% or to the 20.2% figure, due process permits the suit against J & K to be maintained in the court below.
 
 
 18
 In addition to the general revenues derived from Texas transactions, it is undisputed that J & K purchased all of its hardware (nuts, bolts, washers) from Texas suppliers.[16] In the suit at hand, appellants contend that the derrick collapse which occasioned the injuries sued upon may have resulted from faulty hardware or its faulty use. As J & K is alleged to have been the last entity or person to have worked on the derrick before its collapse, J & K's use of the Texas hardware may be intimately involved in the specific claim asserted in this case.
 
 
 19
 Moreover, J & K contracted for work in the immediate case with Texas concerns who, foreseeably, hired Texas residents to work aboard a moveable rig on the coastal waters of Louisiana. This additional factual connection further belies a claim of fortuitous or unfair assertion of Texas' claim to jurisdiction. The extent and nature of J & K's general and specific contacts with Texas make it clear that J & K should properly have anticipated that its actions would have had effects beyond its home state's borders. See World-Wide Volkswagen Corp. v. Woodson, supra. These actions were not the sort of isolated or casual contacts held by the Supreme Court to be insufficient. See, id.; Kulko v. California Superior Court, supra. Further, as is relevant in determining the fairness of a forum's proposed exercise of jurisdiction, it can well be said that J & K purposefully availed itself of the privileges and benefits of the forum state. See World-Wide Volkswagen Corp. v. Woodson, supra. J & K performed a rather substantial amount of work in Texas, involving sizeable revenues and a large number of manhours worked. It purposefully entered Texas in its activities and benefited, both directly and indirectly, from the laws and services maintained by the forum state.
 
 
 20
 Nor can J & K complain that the federal suit in Texas imposes upon it an unfair "burden[ ] of litigating in a distant or inconvenient forum," World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. at 291-92, 100 S.Ct. at 564. J & K urges that it is a closely-held, "mom and pop," operation. While the commercial capacity of a nonresident defendant may be a relevant factor in some cases in determining whether in personam jurisdiction may be exerted, compare, World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. at 298-99, 100 S.Ct. at 567-68 with Kulko v. Superior Court of California, supra, 436 U.S. at 97, 101, 98 S.Ct. at 1699, 1701 and Swafford v. Avakian, 581 F.2d 1224, 1227-28 & n. 6 (5th Cir.1978), cert. denied, 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979), we do not find this factor to carry any significant weight in this case. The particular relationships of J & K with Texas undercut reliance upon the "mom and pop" characterization which J & K advanced to offset the actual extent of its contacts with Texas. Further, whatever might be the result if a different state or industry were involved, it is clear for purposes of the immediate case that those involved in the oil rigging industry and doing business in either Louisiana or Texas are almost certain to find their services utilized in both states, as did J & K. In light of both the proximity and interrelationship of Texas and Louisiana to the immediate claims, and to the nature of the business, we conclude that no unfair burden is placed upon J & K.[17]
 
 
 21
 Conversely, appellants' interests in maintaining this suit against J & K in Texas weigh heavily. All appellants were Texas residents at the time suit was filed. All other defendants named in appellants' suit are subject to Texas jurisdiction. It is uncertain whether other defendants would be subject to suit in Louisiana. Appellants therefore, have a strong interest in maintaining suit in the Texas forum, which can provide "convenient and effective relief." World-Wide Volkswagen v. Woodson, supra, 444 U.S. at 292, 100 S.Ct. at 564. In light of the above factors, therefore, appellants' interests are not adequately protected by a speculative ability to bring suit against all parties in another forum. See id.
 
 
 22
 The judicial system's interests are also served by maintenance of this suit in Texas. Since all defendants save J & K are admittedly subject to jurisdiction in Texas, and not so clearly subject to a single suit elsewhere, including Louisiana, we can best assure "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," id., by finding in personam jurisdiction over J & K. Moreover, judicial economy will be well-served by completion of either the state or federal suit in Texas, both of which have progressed further than the protective suit filed in Louisiana.
 
 
 23
 We conclude, therefore, it is clear that the nature and extent of J & K's contracts with Texas supported the maintenance of this suit against it in the court below. The protections of due process of law do not require dismissal of the suit, in light of the strong interests to the contrary held by appellants.[18]
 
 
 24
 Accordingly, we REVERSE.
 
 
 
 [1]
 Suit was brought in federal court under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. Sec. 1331 et seq., including section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 905(b), incorporated therein, the Jones Act, 46 U.S.C. Sec. 688, and general maritime law. A concurrent state court suit was filed in the 164th Judicial District Court of Harris County, Texas. That suit was stayed pending the determination by the Supreme Court of Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). The Supreme Court there decided that state courts had concurrent jurisdiction with the federal courts to adjudicate cases arising under OCSLA. At the time of oral argument in this case, trial in state court was shortly to proceed. This prospective event does not moot our consideration of this appeal. See note 3 infra and the accompanying discussion. Since the lower state court's exercise of jurisdiction could be upset on appeal, and it is yet uncertain from which forum a final determination of the merits of appellants' claims will emanate, the jurisdictional issue is properly before us for consideration
 
 
 [2]
 See note 1 supra
 
 
 [3]
 The state court order denying J & K a special appearance was a non-final, interlocutory order from which no appeal lies, absent extraordinary circumstances
 Appellants conceded at oral argument that this prior state court determination was not res judicata or subject to collateral estoppel in the federal action. Their concession was contrary to an argument they had made in their briefs on appeal. At oral argument they recognized there were differences in the burdens of proof applicable to the jurisdictional issues in the two forums. In the state court, a defendant seeking a special appearance pursuant to state Rule 120a, has the burden of proving a lack of jurisdiction. On the other hand, in federal court the burden of proof is on the party seeking to acquire jurisdiction.
 
 
 [4]
 Currently a protective suit is also pending in the Western District of Louisiana, in which J & K has appeared. That suit, by joint agreement, is abated pending disposition of the Texas suits. It is unclear whether all the defendants in the immediate action would be subject to Louisiana jurisdiction
 
 
 [5]
 Fed.R.Civ.P. 59(a) broadly states the grounds to move for a rehearing to alter or amend judgment:
 (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trial have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
 
 
 [6]
 Fed.R.Civ.P. 60(b) provides, in pertinent part:
 Rule 60. Relief from Judgment or Order.
 (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.
 
 
 [7]
 Rule 60 is to be considered liberally in applying it to various fact situations, see Ideal Structures Corp. v. Levine Huntsville Development Corp., 396 F.2d 917 (5th Cir.1968), and in the interest of equity, any doubt concerning the characterization of the motion may be resolved in favor of a determination which preserves a litigants' right of appeal, accord Chastain v. Kelly, 167 D.C.App. 11, 510 F.2d 1232, 1237-38 (1975)
 We note that while the district court found the motion timely, it did not specifically address the reasoning which led to its conclusion of timeliness. We do not find any significance in this omission. Rule 60(b), unlike Rule 59, provides as is here relevant that a motion shall be made within a reasonable time, but within one year, after judgment is entered. It can be readily inferred from the district court's opinion that it found that appellants' motion was made within such a reasonable period of time. Moreover, since the district court properly characterized the motion as made pursuant to Rule 60(b), the timeliness of that motion did not affect the continuing efficacy of the notice of appeal as it would have had the motion been made pursuant to Rule 59.
 
 
 [8]
 The district court made these summary findings without further elaboration as to any factual findings which may have affected its determination
 
 
 [9]
 See note 1 supra
 
 
 [10]
 The paucity of cases in this Circuit, and in others, which address the issue of personal jurisdiction in federal cases may be explained by an observation made by the Terry v. Raymond International, Inc., supra, Court:
 Strict federal venue requirements, however, have made it unnecessary to develop a judicial doctrine of the limits of personal jurisdiction in federal cases. Thus, as a practical matter, the most significant restraint on the personal jurisdiction of federal courts is service of process....
 658 F.2d at 402. See note 12, infra, and the accompanying discussion.
 
 
 [11]
 Among those factors which might be viewed in a different light are:
 the forum State's interest in adjudicating the dispute ...; the plaintiff's interest in obtaining convenient and effective relief ... at least when that interest is not adequately protected by the plaintiff's power to choose the forum ...; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies....
 World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. at 292, 100 S.Ct. at 564 (citations omitted).
 
 
 [12]
 Since Congress has not provided for general, nationwide service of process, and those specialized statutes so providing are not applicable, cf. 28 U.S.C. Sec. 2361 (interpleader); 15 U.S.C. Secs. 5, 22, 25 (federal antitrust laws); 15 U.S.C. Sec. 77v(a) (federal securities laws), the propriety of service upon J & K must be gauged in accordance with the state statute. See Fed.R.Civ.P. 4 (absent explicit federal statutory authorization or service within the 100-mile "bulge", state provisions govern). Cf. Terry v. Raymond International, Inc., supra (service of process upon nonresident defendant's employee present within the forum state)
 J & K received service of process through the Secretary of State of Texas pursuant to Tex.Civ.Code Ann. art. 2031b (Vernon 1970) which designates the Secretary of State as the nonresident defendant's agent for service of process when the long-arm statute extends jurisdiction to that defendant. No other means of service was relied upon herein. See Fed.R.Civ.P. 4.
 
 
 [13]
 Prior to Hall, and as held by the district court below, this Circuit had interpreted the Texas long-arm statute as it literally provides to limit Article 2031b jurisdiction to those cases in which a nexus exists between the asserted cause of action and the specific acts engaged in by a nonresident defendant within Texas. See Prejean v. Sonatrach, Inc., 652 F.2d 1260 (5th Cir.1981). The sharply-divided Hall panel, on rehearing, has laid this limitation to rest, as this Court recognized upon rehearing in Placid Investments, Ltd. v. Girard Trust Bank, 689 F.2d 1218 (5th Cir.1982)
 
 
 [14]
 The Supreme Court subsequently summarized the International Shoe requirement of "minimum contacts" as involving "two related, but distinguishable, functions":
 It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.
 The protection against inconvenient litigation is typically described in terms of "reasonableness" or "fairness." We have said that the defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, supra [326 U.S.], at 316, 66 S.Ct. at 158, quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). The relationship between the defendant and the forum must be such that it is "reasonable ... to require the corporation to defend the particular suit which is brought there." 326 U.S. at 317, 66 S.Ct. at 158. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); the plaintiff's interest in obtaining convenient and effective relief, see Kulko v. California Superior Court, supra, 436 U.S. at 92, 98 S.Ct. at 1697, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. Schaffer v. Heitner, 433 U.S. 186, 211, n. 37, 97 S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683 (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see Kulko v. California Superior Court, supra, 436 U.S. at 93, 98, 98 S.Ct. at 1697, 1700....
 Nevertheless, we have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution... [T]he Framers ... intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States--a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment.
 World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. at 291-93, 100 S.Ct. at 564-65.
 
 
 [15]
 This analysis of contacts comes from a chart which had been prepared for the district court below. J & K does not dispute the accuracy of this summary chart in showing these Texas contacts
 J & K does dispute appellants' conclusion that the above transactions accounted for 20.2% of its revenues. J & K argues that the Texas-derived revenues of $215,384.50 must be considered against the full two-years' of gross revenues--as the period of time for which invoices were examined by appellants--rather than against the fourteen-months' of gross revenues considered by appellants in deriving the 20.2% figure--those months during the two-year period within which Texas transactions were found to have occurred. J & K asserted on oral argument its belief that its Texas-derived revenues approximated 6% of its total gross revenues during the two years studied.
 The district court below did not make any findings with regard to these conflicting factual conclusions.
 
 
 [16]
 J & K disputes neither the fact of these exclusive purchases nor appellants' contention that these purchases represented six additional transactions during the two-year period discussed supra at note 15
 
 
 [17]
 The second, related function to be served by the "minimum contacts" analysis set forth in International Shoe v. Washington, supra, is irrelevant to this Court's consideration: that the states "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal forum." World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. at 292, 100 S.Ct. at 564. See note 14 supra. As discussed, supra, since this case involves asserted jurisdiction by a federal forum under federal question jurisdiction, concern over the above factor has no bearing upon our determination
 
 
 [18]
 Given the nature of J & K's contacts and appellants' strong interests in maintaining suit in the forum selected, we conclude that exertion of personal jurisdiction over J & K herein meets the due process requirements of either the Fifth or Fourteenth Amendments. Therefore, we need not address the question of whether service of process, effected pursuant to state law which extends to the limits of due process, would otherwise be gauged against state or federal due process limitations when a nonresident defendant is sued in federal court in a federal question case