GEE, Circuit Judge:
 

 On a day in April of 1979, Jose DeMelo was applying spray paint aboard a vessel being constructed for George Engine Company, Inc. (“George Engine”) by his employer, Toche Marine, Inc. (“Toche Marine”) at its shipyard in Biloxi, Mississippi. An explosion and flash fire suddenly occurred, allegedly due to the ignition of flammable paint vapors. DeMelo suffered severe burns. He and his wife brought this suit in federal court in Mississippi naming George Engine, Toche Marine, and Woolsey Marine Industries, Inc. (“Woolsey”), the manufacturer of the paint, as defendants. The claims against George Engine and Toche Marine were based upon general maritime law and the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C, § 905 (1976) (the “LHWCA”). The DeMe-los sought recovery from Woolsey based upon breach of implied warranty and strict liability.
 

 Woolsey entered a special appearance and filed a motion to dismiss under Rule 12, Federal Rules of Civil Procedure, for lack of subject matter and personal jurisdiction.
 
 [1]
 
 The district court granted Woolsey’s motion on the latter ground, finding that “Woolsey has never had that minimal contact with the State of Mississippi to accord this suit the benefit of due process.” In this interlocutory appeal,
 
 [2]
 
 the
 
 *1263
 
 DeMelos contend that for two reasons the district court erred in dismissing Woolsey. First, they argue that Woolsey has waived its personal jurisdiction defense; second, they urge that Woolsey’s contacts with Mississippi render it amenable to the jurisdiction of a federal district court sitting there.
 

 I.
 

 Before the plaintiffs commenced the present lawsuit in Mississippi, Woolsey had filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the Eastern District of New York. That court entered an automatic stay under 11 U.S.C. § 362 (Supp. Ill 1979), which had the effect, among other things, of prohibiting litigation against Woolsey. Upon the filing of the present lawsuit, the plaintiffs were made aware of the automatic stay, and in January of 1981 they filed a complaint seeking relief from it. On April 20, 1981, the Bankruptcy Court approved a stipulation entered into by plaintiffs, Toche Marine and Woolsey, which provides in relevant part:
 

 1. Joseph De Melo, Marie De Melo, Lucy De Melo and Carlos De Melo, plaintiffs in this adversary proceeding (“plaintiffs”), and Toche Marine, Inc. (“Toche”), should be and hereby are relieved, on consent of Woolsey Marine Industries, Inc. (“Wool-sey”), as Debtor and Defendant in this proceeding, from the provisions of Section 362 of the Bankruptcy Code to the extent that they may continue the aforesaid action brought in the United States District Court for the District of Mississippi referred to hereinabove; and
 

 2. Plaintiffs and Toche waive any and all rights they may have to claim against Woolsey or the estate of Woolsey Marine Industries, Inc., Debtor in these bankruptcy proceedings, for satisfaction of any judgment or any other right they may have or obtain in the aforementioned action now pending in the United States District Court for the District of Mississippi, or otherwise, they agreeing to proceed solely against Aetna Insurance Company and the proceeds of the above-mentioned insurance policy to the limits of Woolsey’s coverage thereunder, for any and all relief they might otherwise be entitled to against Woolsey or the bankrupt estate herein; and
 

 3.The relief from the stay as provided for in this stipulation is contingent upon the consent of Aetna’s counsel, Thomas L. Stennis, Esq., and also upon approval of the United States Bankruptcy Court of all of the provisions hereof and it is expressly reserved that the automatic stay provided for in Section 362 of the Bankruptcy Code as respects Woolsey is modified only to the extent that the plaintiffs herein and Toche are relieved from the terms and conditions thereof and no other party to the said action now pending in Mississippi, or otherwise, shall be deemed to have been in any way or to any extent, contingent, or otherwise, relieved from the said stay, said stay remaining in full force and effect against all such parties other than the plaintiffs herein and Toche now existing or hereinafter appearing.
 

 Plaintiffs argue that the provision in paragraph 1 of the stipulation lifting the automatic stay so that the parties “may continue” the litigation in Mississippi constitutes a waiver by Woolsey of its personal jurisdiction defense. This argument is frivolous. Though perhaps inartfully drawn, the stipulation as a whole clearly indicates that its only purpose was to remove the barrier to the present litigation erected by the Chapter 11 petition, not to affect substantive rights in this case. Nothing in it says that the present litigation must “continue” past a valid motion to dismiss. The right to be tried only by a court of competent jurisdiction is a liberty interest protected by the Constitution.
 
 Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
 
 456 U.S. 694, 701-02, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492, 501 (1982). It is a commonplace that waiver of constitution
 
 *1264
 
 al rights in any context must “at the very
 
 least,
 
 be clear” to be effective.
 
 Fuentes v. Shevin,
 
 407 U.S. 67, 95, 92 S.Ct. 1983, 2001, 32 L.Ed.2d 556 (1972) (emphasis original);
 
 cf. Petrowski v. Hawkeye-Security Insurance Co.,
 
 350 U.S. 495, 76 S.Ct. 490, 100 L.Ed. 639 (1956) (example of a stipulation clearly waiving personal jurisdiction defense). Paragraph 2 of the stipulation shows that the parties knew how to provide clearly for waiver when one was intended. Woolsey’s personal jurisdiction defense has not been waived.
 
 [3]
 

 II.
 

 The plaintiffs’ second contention is that the district court erroneously determined that Woolsey was not amenable to personal jurisdiction in federal court in Mississippi. The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process.
 
 Terry v. Raymond Int'l, Inc.,
 
 658 F.2d 398, 401 (5th Cir.1981),
 
 cert. denied,
 
 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982). Amenability to jurisdiction means that a defendant is within the substantive reach of a forum’s jurisdiction under applicable law.
 
 Id.
 
 Service of process is simply the physical means by which that jurisdiction is asserted.
 
 Id.
 
 Plaintiffs effected service of process on Woolsey pursuant to the Mississippi long-arm statute,
 
 [4]
 
 by serving the Mississippi Secretary of State. Woolsey has not challenged the technical effectiveness of the physical service; it attacks only its amenability to the jurisdiction of the district court under applicable law.
 

 A.
 

 A threshold question, not originally addressed by the parties or the district court, is whether Woolsey’s amenability to personal jurisdiction in this case is governed by a federal or state standard. Unfortunately we are faced with an embarrassment of riches on this subject — our decisions are in conflict. Although both parties accepted our invitation to brief this issue supplemen-tally, neither has come to grips with it. Even so, the point is important to our law and we must address it, assisted or no.
 

 A little background is necessary to understand this issue fully. It is well-settled that a defendant is amenable to the personal jurisdiction of a federal court in a diversity case to the extent permitted a state court in the state where the federal court sits.
 
 Brown v. Flowers Industries, Inc.,
 
 688 F.2d 328, 331 (5th Cir.1982);
 
 Terry,
 
 658 F.2d at 401;
 
 Gold-Kist, Inc. v. Baskin-Robbins Ice Cream Co.,
 
 623 F.2d 375 (5th Cir.1980) (collecting cases). In other words, a state standard applies in diversity cases: the federal court may assert personal jurisdiction only if the cognate state court could have done so. There are two components of
 
 *1265
 
 the state standard. First, the state’s long-arm statute, as interpreted by the state courts, must apply. Second, its application in the particular case must comport with the due process requirements of the fourteenth amendment.
 
 Brown,
 
 688 F.2d at 331-32;
 
 Terry,
 
 658 F.2d at 401. Thus, the state standard, in referring to the power of state courts, incorporates elements of both state and federal law.
 

 The question in the present case is what standard of amenability should apply when the plaintiffs claims are founded in part upon federal question jurisdiction, but service of process is effected under a state long-arm statute. The two most recent Fifth Circuit cases on this point, decided only three days apart, give different answers. The second of these, issued on December 17 of last year, held that a federal standard applies:
 

 [T]he otherwise-threshold inquiry of whether the state long-arm statute asserts jurisdiction over the defendant sought to be joined in suit, is irrelevant “where the power of the federal court ... can be independently sustained ... on the ground that the matter in controversy arises under the Constitution, laws or treaties of the United States.”
 
 Lone Star Package Car Co. v. Baltimore & O.R. Co.,
 
 212 F.2d 147, 153-54 (5th Cir.1954).
 

 Lapeyrouse v. Texaco, Inc.,
 
 693 F.2d 581, 585 (5th Cir.1982). Although the physical means of service in federal .question cases may be prescribed by state law, see discussion of Fed.R.Civ.P. 4,
 
 infra, Lapeyrouse
 
 held that state limitations upon amenability to jurisdiction are inapplicable in such cases. Instead, the court held the “sole test of amenability” in such cases is the due process clause of the fifth amendment. 693 F.2d at 585.
 

 Three days before
 
 Lapeyrouse
 
 was decided, another panel of our court had reached the opposite result in
 
 Burstein v. State Bar of California,
 
 693 F.2d 511 (5th Cir.1982). That panel approached the problem by analyzing the terms of Fed.R.Civ.P. 4, the general statutory basis for assertion of personal jurisdiction in the federal courts.
 
 [5]
 

 Burstein
 
 held that the “clear import” of Rule 4, “at
 
 *1266
 
 least where the assertion of jurisdiction and not just the service of process depends on the state statute, is that a federal court,
 
 even in
 
 a
 
 federal question case,
 
 can use a state long-arm statute only to reach those ■parties whom a court of the state could also reach under it.”
 
 Id.
 
 at 514 (emphasis added). In so holding, the
 
 Burstein
 
 court distinguished a number of earlier Fifth Circuit cases, including those relied upon in
 
 Lapey-rouse,
 
 which undertook to announce a broad rule requiring a federal amenability standard in federal question cases generally.
 
 See id.
 
 at 515-17.
 
 [6]
 
 Having reviewed those authorities and others, together with the terms and history of Rule 4, we adopt the
 
 Burstein
 
 approach. To explain why, we will first briefly recount the
 
 Burstein
 
 analysis of Rule 4 and then discuss our other authorities in light of it.
 

 In
 
 Burstein,
 
 a Louisiana resident sued the State Bar of California under 42 U.S.C. § 1983 alleging that its erroneous grading of her bar examination violated her constitutional rights. In addition to this federal question, she also raised diversity claims of negligence and breach of contract. We can do no better than the
 
 Burstein
 
 court’s own succinct analysis of Rule 4, so we reproduce it here in full:
 

 Fed.R.Civ.P. 4 provides for service of process in cases brought in federal court. While by its terms rule 4(d) might well apply to this case, it is clear that rule 4(e) is designed for use to obtain service on parties not resident within the forum state, and by negative implication it excludes rule 4(d).
 
 See
 
 2 J. Moore, J. Lucas, H. Fink, & C. Thompson,
 
 Moore’s Federal Practice
 
 ¶¶4.32[1], 4.41-1[3] (1982). We thus direct our attention solely to rule 4(e), which has three provisions relevant to our analysis.
 

 The first part of the first sentence of rule 4(e) applies “[wjhenever a statute of the United States ... provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held ...” and the federal statute or a court order thereunder prescribes a manner of service. Jurisdiction is then asserted by the federal statute and service is made “under the circumstances and in the manner prescribed by the statute or order.... ”
 

 The second part of the first sentence applies when a federal statute provides for service, thus asserting jurisdiction, but does not prescribe the manner of service. In that case, “service may be made ... in a manner stated in this rule,” i.e., rule 4.
 

 Neither one of these provisions applies to this case, because neither section 1983 nor section 1343 even “provides” for service. It is thus necessary to examine the second sentence of rule 4(e), which states:
 

 Whenever a statute ... of the state in which the district court is held provides . .. for service of a summons ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute... .
 

 The clear import of the “under the circumstances” language, at least where the assertion of jurisdiction and not just the service of process depends on the state statute, is that a federal court, even in a federal question case, can use a state long-arm statute only to reach those parties whom a court of the state could also reach under it.
 

 693 F.2d at 514 (footnote omitted). To summarize, the
 
 Burstein
 
 court concluded that when a federal question case is based upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, Rule 4(e) requires that the state’s standard of amenability to jurisdiction apply. We think that this exposition of the Rule is the more sound.
 
 [7]
 

 
 *1267
 
 One possible alternative to the
 
 Burstein
 
 analysis is that Rule 4(e) with its “under the circumstances” language is only one alternate means of service upon non-residents, and that Rule 4(d)(7), providing for service in the “manner,” but not under the “circumstances” of state law, is by its terms equally available. Although reading Rule 4(e) as the
 
 Burstein
 
 court did — as exclusive in this context — seems the most sensible construction of the terms of Rule 4 as a whole, it is nevertheless true that the history of Rule 4 suggests that the drafters may have considered Rules 4(d)(7) and (e) to be alternative provisions for service of process outside the forum state. See 4 C. Wright & A. Miller, Federal Practice & Procedure §§ 1112-14 (1969) (discussing 1968 amendments to Rule 4); 2 J. Moore, J. Lucas, H. Fink, & C. Thompson, Moore’s Federal Practice ¶4.32[1] at 4-342 n. 2 (1982) (same). Nevertheless, courts and commentators agree that even if Rule 4(d)(7) be treated as an alternative for out-of-state service, care must be taken not to read the amenability language out of Rule 4(e) in the process:
 

 Rule 4(d)(7), however, is silent on the question of amenability to service, or more simply, when a state long-arm statute may be used.... Accordingly, when the rule is being used to apply a state long-arm statute, it must be read together with Rule 4(e), ... which does provide standards for service upon a party not an inhabitant of or found within the state. Specifically, the last clause of Rule 4(e) provides that out-of-state “service may be made
 
 under the circumstances and in the manner prescribed in the state statute or rule.”
 
 (emphasis supplied). In other words, service under a constitutionally valid long-arm statute in a federal court is only possible in the situations where the in-state activities of the defendant would be sufficient to invoke the long-arm statute had defendant been sued in state court. The “manner of service” language in Rule 4(d)(7) and the “circumstances of service” language in Rule 4(e) must both be satisfied.
 

 Stanley Works v. Globemaster, Inc.,
 
 400 F.Supp. 1325, 1337-38 (D.Mass.1975) (citations omitted),
 
 quoted in
 
 2 J. Moore, et al.,
 
 supra,
 
 ¶ 4.41 — 1[3] at 4-468;
 
 Navarro v. Sedco, Inc., supra,
 
 449 F.Supp. at 1357-58 n. 1 (“Alternatively, the court notes that where Rule 4(d)(7) and 4(e) have been viewed interchangeably as authorizing extraterritorial service pursuant to state long arm statutes, personal jurisdiction questions have been analyzed both in terms of due process and amenability under the state statute that was invoked, notwithstanding the differences in wording between these parts of
 
 *1268
 
 the rule.”),
 
 citing Time, Inc. v. Manning,
 
 366 F.2d 690 (5th Cir.1966) (discussed
 
 infra);
 
 4 C. Wright
 
 &
 
 A. Miller,
 
 supra,
 
 § 1114 at 469 (“Since neither the Advisory Committee Notes nor the text of the rule provides any clear distinction between the two provisions and there is no apparent reason to prefer the use of one or the other rule in connection with extraterritorial service pursuant to state law, nothing should turn on plaintiff’s use of Rule 4(d)(7) rather than Rule 4(e) or vice versa.”).
 

 Having concluded that Rule 4 was properly interpreted and applied in
 
 Burstein,
 
 we must ask whether the principle of
 
 stare decisis
 
 prevents this panel from following it.
 
 Burstein
 
 discussed a number of prior Fifth Circuit decisions, concluding that none of them was inconsistent with its view of Rule 4. 693 F.2d at 515-17. By contrast, two of these cases were treated as controlling in
 
 Lapeyrouse. Lone Star Package Car Co. v. Baltimore & O.R. Co.,
 
 212 F.2d 147 (5th Cir.1954);
 
 Terry v. Raymond International, Inc.,
 
 658 F.2d 398 (5th Cir.1981).
 

 Lone Star
 
 is the source of the broad dictum applied in
 
 Lapeyrouse
 
 that amenability in federal question cases generally is governed by a federal standard. Nevertheless, it is clear that
 
 Lone Star
 
 does not preclude the interpretation of Rule 4 reached in
 
 Burstein.
 
 First, in an alternative holding, the
 
 Lone Star
 
 court held service of process proper pursuant to Rule 4(d)(3), which provides for service upon an agent wholly apart from any provision of state law.
 
 See Burstein,
 
 693 F.2d at 515;
 
 Jim Fox Enterprises, Inc. v. Air France,
 
 705 F.2d 738 at 741 n. 8 (5th Cir.1983). A much more critical distinction, however, is that
 
 Lone Star
 
 was decided in 1954, long before the 1963 amendments to Rule 4 added the second sentence of Rule 4(e). Thus, at the time of
 
 Lone Star,
 
 nothing in Rule '4 required that service of process ever be asserted “under the circumstances” permitted by state law.
 
 See
 
 4 C. Wright & A. Miller,
 
 supra,
 
 § 1075 at 312-13 (discussion of 1963 amendments). Accordingly, even
 
 Lone
 
 Star’s alternative holding that service was proper under Rule 4(d)(7) and the Texas long-arm statute is consistent with
 
 Bur-stein.
 
 The Rule as it then stood provided only for service in the “manner” of state law, saying nothing regarding amenability. Had
 
 Burstein
 
 come upon the heels of the 1963 amendments to Rule 4, there would be virtually no question that it stated a proper modification of
 
 Lone Star
 
 in light of intervening legislative action.
 

 Unfortunately that was not the case. Like a Tower of Babel, our post-1963 pronouncements spoke in irreconcilable voices.
 
 [8]
 
 Without citing or attempting to distinguish
 
 Lone Star,
 
 or discussing the amendments to Rule 4, we at least twice applied a state standard of amenability in federal question cases.
 
 Familia de Boom v. Arosa Mercantil, S.A.,
 
 629 F.2d 1134, 1138 (5th Cir.1980) (a Jones Act case in which the court cited a diversity case as stating the amenability standard and continued, “we must here decide if the defendants’ contacts with Texas were sufficient to permit Texas to assert jurisdiction”),
 
 cert. denied,
 
 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981);
 
 Time, Inc. v. Manning,
 
 366 F.2d 690, 693 (5th Cir.1966) (also applying the diversity standard). Not surprisingly, the lower courts under our supervision did likewise.
 
 Bloom v. A.H. Pond Co.,
 
 519 F.Supp. 1162, 1165 & n. 2 (S.D.Fla.1981);
 
 Navarro
 
 v.
 
 Sedco, supra,
 
 449 F.Supp. at 1357-58 n. 1 (relying in part upon
 
 Manning, supra); Stanley
 
 v.
 
 Local 926, International Union of Operating Engineers,
 
 354 F.Supp. 1267, 1270 & n. 2 (N.D.Ga.1973). This was the state of the law when
 
 Terry v. Raymond Int'l, Inc.,
 
 658 F.2d 398 (5th Cir.1981) was decided.
 
 Terry
 
 discussed neither the 1963 amendments to Rule 4 nor any of the intervening federal question cases that had applied a state standard of amenability. Rather, relying solely upon the broad language in
 
 Lone Star, Terry
 
 applied a federal standard, treating the
 
 *1269
 
 reach of the state long-arm statute as “irrelevant.” 658 F.2d at 402.
 

 The court in
 
 Burstein
 
 thought
 
 Terry
 
 distinguishable on its facts.
 
 See
 
 693 F.2d at 516. Although we are not sure that this is so,
 
 [9]
 
 we
 
 are
 
 sure that it does not matter. Even if the facts in
 
 Terry
 
 were precisely equivalent to those in
 
 Burstein,
 
 the latter court could not be bound by
 
 Terry’s
 
 result; one that was itself inconsistent with prior authority. Our court having failed to speak with one voice in the matter, there simply was no settled rule of law for the
 
 Burstein
 
 court to apply. In such a case, we think the best approach is to do what that court did: look to the Rule.
 

 In our case, as in
 
 Burstein,
 
 the Rule tells us to ask whether a Mississippi court could have asserted personal jurisdiction over the defendant. The LHWCA, like § 1983, the statute applicable in
 
 Burstein,
 
 is silent as to service of process in actions like the one before us.
 
 See
 
 33 U.S.C. §§ 905(b), 933 (1976);
 
 but compare id.,
 
 § 921(e) (nationwide service of process provided in proceedings for review of a compensation award by a court of appeals). Accordingly, the second sentence of Rule 4(e) is applicable and requires that Woolsey be served “under the circumstances and in the manner” prescribed by the Mississippi long-arm statute as interpreted by that state’s courts.
 

 B.
 

 The relevant portion of the Mississippi long-arm statute extends jurisdiction to any nonresident defendant “who shall commit a tort in whole or in part in this state against a resident of this state.”
 
 See
 
 note 4,
 
 supra.
 
 This provision, which was added by amendment in 1964, has been authoritatively construed to extend the jurisdiction of Mississippi courts to hear cases like the present one:
 

 Under the amended statute, a nonresident manufacturer of a dangerously defective or unsafe product who places it in interstate commerce for the purpose of distribution and ultimate sale to consumers in other States, whether with a specific intent that it be distributed, sold and used in this State or not, may be subjected to a personam action for damages in the courts of this State by such consumer who may be injured in this State as a result of its defective or unsafe condition.
 

 Smith v. Temco, Inc.,
 
 252 So.2d 212, 216 (Miss.1971);
 
 Mandel v. James Graham Brown Foundation, Inc.,
 
 375 So.2d 1017 (Miss.1979)
 
 (Temco
 
 applied in negligence action);
 
 Miller v. Glendale Equipment & Supply, Inc.,
 
 344 So.2d 736 (Miss.1977);
 
 (Temco
 
 applies under contract portion of long-arm statute);
 
 see also Brown v. Flowers Industries, Inc.,
 
 688 F.2d at 333;
 
 Mississippi Interstate Express, Inc. v. Transpo, Inc.,
 
 681 F.2d 1003, 1005-06 n. 1 (5th Cir.1981).
 
 [10]
 
 
 *1270
 
 Since Woolsey may be reached by Mississippi’s long arm, the only remaining question is whether that grasp is constitutional.
 

 C.
 

 The Supreme Court recently explained afresh the nature of the fourteenth amendment due process limitation on state court personal jurisdiction:
 

 The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that “the maintenance of the suit ... not offend ‘traditional notions of fair play and substantial justice.’ ”
 
 International Shoe v. Washington,
 
 326 U.S. 310, 316 [66 S.Ct. 164, 158, 90 L.Ed. 95] (1945), quoting
 
 Milliken v. Meyer,
 
 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278] (1940).
 

 Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guiñee,
 
 456 U.S. 694, 702-03, 102 S.Ct. 2099, 2104-05, 72 L.Ed.2d 492, 501-02 (1982) (footnote omitted). Although one member of the Court expressed concern that this formulation of the due process requirement signaled an abandonment of the “minimum contacts” test developed in modern personal jurisdiction cases,
 
 [11]
 
 456 U.S. at 709, 102 S.Ct. at 2108, 72 L.Ed.2d at 508-09 (Powell, J., concurring), the majority affirmed its adherence to the “minimum contacts” requirement.
 
 Id.
 
 at 702-03 n. 10, 102 S.Ct. at 2104r-05 n. 10, at 501 n. 10. Accordingly, in
 
 Burstein,
 
 we held that after
 
 Insurance Corp. of Ireland
 
 “the standard must be simply ‘traditional notions of fair play and substantial justice’ with ‘contacts’ viewed as a way of demonstrating whether the standard is satisfied.” 693 F.2d at 517-18.
 

 The subject of due process limitations upon state court exercise of personal jurisdiction recently has received extensive and scholarly treatment in our court.
 
 Burstein,
 
 693 F.2d at 517-23;
 
 Brown v. Flowers Industries, Inc.,
 
 688 F.2d 328, 331-34 (5th Cir.1982);
 
 Mississippi Interstate Express, Inc. v. Transpo, Inc.,
 
 681 F.2d 1003, 1006-12 (5th Cir.1981). We see no reason to reinvent the wheel here; the precedential and doctrinal landscape has been thoroughly surveyed in these cases. Judge Rubin has ably summarized the principles we must apply:
 

 The number of contacts with the forum state is not, by itself, determinative.... What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state.
 

 “When a defendant purposefully avails himself of the benefits and protection of the forum’s laws — by engaging in activity ... outside the state that bears reasonably foreseeable consequences in the state — maintenance of the law suit does not offend traditional notions of fair play and substantial justice.” ... In addition to the existence of foreseeable consequences, courts consider “the quantity of contacts, and the source and connection of the cause of action with those contacts” in determining whether a defendant’s actions constitute “purposeful availment.”
 

 Two other factors are also relevant in determining whether the exercise of personal jurisdiction comports with due process. The first is “the interest of the state in providing a forum for the suit.” ... Finally, the “relative conveniences and inconveniences to the parties” are also relevant.
 

 Brown v. Flowers Industries, Inc.,
 
 688 F.2d at 333 (citations and footnotes omitted).
 

 The plaintiffs bear the burden of establishing the trial court’s personal jurisdiction over Woolsey.
 
 Brown,
 
 688 F.2d at 332. But where, as here, the district court decided the defendant’s motion without an evidentiary hearing and solely on the basis of affidavits and depositions, the plaintiffs’
 
 *1271
 
 burden is met by the presentation of a prima facie case for personal jurisdiction.
 
 Id.; Data Disc, Inc. v. Systems Technology Assos., Inc.,
 
 557 F.2d 1280, 1285 (9th Cir.1977).
 
 [12]
 
 Moreover, all conflicts in the facts alleged in opposing affidavits “must be resolved in plaintiffs’] favor for purposes of determining whether a prima facie case for
 
 in personam
 
 jurisdiction has been established.”
 
 Id.
 
 (quoting
 
 United States Ry. Equipment Co. v. Port Huron & Detroit R.R.,
 
 495 F.2d 1127, 1128 (7th Cir.1974).
 

 We have reviewed all the materials presented to the district court on the jurisdictional issue and conclude that the plaintiffs have made out a prima facie case. Certain facts are uncontroverted. Woolsey is a New York corporation and has neither qualified to do business in Mississippi nor received any license or franchise from that state. It has never directly or indirectly owned or leased property there. It has never maintained any bank account, office, telephone, book of account, or address in Mississippi. No employee or agent has ever lived there. In arguing that the absence of these contacts precludes jurisdiction, Wool-sey glosses over one critical and undisputed fact. In its affidavits opposing the plaintiffs’ motion to dismiss, Woolsey admitted that it sold its products to various Mississippi entities at its New Orleans office, and most important, that it shipped these products into Mississippi.
 
 [13]
 
 Thus, contrary to Woolsey’s suggestion, this is not a pure “stream of commerce” case in which a sale, followed by the unilateral action of the purchaser in transporting the goods to a different state, is relied upon to subject the seller to the jurisdiction of that state’s courts.
 
 [14]
 

 This is not a case in which the seller has structured its primary conduct to avoid contact with the forum state.
 
 See World-Wide Volkswagen,
 
 444 U.S. at 297, 100 S.Ct. at 567. Rather, by its own affirmative acts Woolsey has introduced its products into Mississippi for use in that state. By these shipments, Woolsey has “purposefully availed” itself of the privilege of conducting activities in Mississippi and its “conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.”
 
 Id.
 
 Plaintiffs’ pri-ma facie case on the purposeful availment issue has been made out.
 
 [15]
 

 
 *1272
 
 In addition to Woolsey’s “purposeful availment” of the benefits of Mississippi, we find that the other relevant factors support the assertion of personal jurisdiction in this case. Principal among these is “the interest of the state in providing a forum for the suit.”
 
 Brown
 
 v.
 
 Flowers Industries, Inc.,
 
 688 F.2d at 333 (quoting
 
 Austin v. North American Forest Products, Inc.,
 
 656 F.2d 1076, 1090 (5th Cir.1981)). Mississippi has an exceptionally strong interest in providing a forum for the redress of injuries to its residents occurring within its borders and caused by an allegedly defective product shipped from outside the state.
 
 Cf.
 
 Restatement (Second) of Conflicts of Laws § 146 (1971). This interest is based on more than the fact that the injured party is a Mississippi resident, though that fact alone is significant. Also important is the practical consideration that most product liability cases involve multiple parties. Where an accident caused by a defective product occurs within a state, it is likely that parties other than the plaintiff, such as retailers or employers, will also reside there. In this situation, the state has a substantial interest in providing a forum so that all claims arising from the accident may be litigated by its residents conveniently and efficiently in one court at one time. In these cases, the interest of the state is intertwined with the final factor discussed in
 
 Brown,
 
 the “relative conveniences and inconveniences to the parties.” 688 F.2d at 333. Thus, in the present case, where the plaintiff and two of three defendants reside in Mississippi, while the third defendant maintains a business location in nearby New Orleans, we find that the interests of the state, as well as the relative interests of the parties, favor exercise of jurisdiction by a Mississippi court. We therefore conclude based upon all considerations which we have discussed that plaintiffs have prima facie demonstrated that allowing this lawsuit to proceed in the Mississippi district court would not offend “traditional notions of fair play and substantial justice.”
 
 Insurance Corp. of Ireland v. Compagnie des Bauxites de Guiñee,
 
 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982) (quoting
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).
 
 [16]
 

 The judgment of the district court is reversed and this cause is remanded for further proceedings consistent with this opinion.
 

 REVERSED and REMANDED.
 

 [1]
 

 . Because the basis of federal subject matter jurisdiction over Woolsey was not immediately apparent from the pleadings, we noticed that issue sua
 
 sponte
 
 and conclude that diversity jurisdiction is present. As it stood at the time of Woolsey’s motion to dismiss, the complaint did not state the basis for federal subject matter jurisdiction over the claims against Wool-sey. Diversity of citizenship was precluded because both the DeMelos and Toche Marine were alleged to be citizens of Mississippi. Woolsey urged in its motion to dismiss that pendent party jurisdiction should not be asserted over the state law claims of breach of warranty and strict liability. In opposition to the motion, the DeMelos disavowed reliance upon pendent jurisdiction, and attempted to rechar-acterize those claims, arguing that products liability actions relating to “marine” paint are within the maritime jurisdiction. Record at 117. However, this jurisdictional basis was
 
 not
 
 asserted in the complaint itself as required by Fed.R.Civ.P. 8(a)(1). Since the DeMelos did not attempt to amend to cure this defect, they cannot now rely on maritime jurisdiction.
 
 E.g. Vacca v. Meetze,
 
 499 F.Supp. 1089, 1090 (S.D.Ga.1980); 5 C. Wright & A. Miller, Federal Practice & Procedure §§ 1214, 13S0 (1969).
 

 Instead of ruling first on the question of subject matter jurisdiction, as would be expected, 5 C. Wright & A. Miller,
 
 supra
 
 at 548, the district court dismissed Woolsey for lack of personal jurisdiction. Subsequently, with Woolsey no longer before it, but before this interlocutory appeal was granted, the district court permitted the DeMelos to amend their complaint to allege that they are Portuguese citizens and thereby invoke “diversity of citizenship ... as a separate ground of jurisdiction for all causes of action herein stated against TOCHE MARINE, GEORGE ENGINE, or any
 
 other Defendant.”
 
 Amendment to Second Amended Complaint, Record at 244 (emphasis added). Finally, the facial allegations of the complaint were sufficient to assert jurisdiction over the claims against Woolsey. Since Woolsey has not claimed that allowing the plaintiffs to amend the complaint at that late date was an abuse of discretion,
 
 see Altwan v. Connally,
 
 456 F.2d 1114 (2d Cir.1972), or that the allegations of citizenship are not supported by the facts,
 
 Paterson v. Weinberger,
 
 644 F.2d 521, 523 (5th Cir.1981), we conclude that our power to hear this case as to Woolsey is grounded in diversity jurisdiction. Moreover, we emphasize, in light of the tortured trail blazed by plaintiffs’ counsel, that diversity is the
 
 only
 
 basis of such jurisdiction established in this case. The claims against the other defendants, of course, raise federal questions under the LHWCA.
 

 [2]
 

 . In our earlier decision in this case, we held that the DeMelos’ interlocutory appeal is properly before this court.
 
 DeMelo v. Woolsey Marine Industries, Inc.,
 
 677 F.2d 1030 (5th Cir.1982). That decision is the law of the case; Woolsey has made no showing of circumstances that would allow us to reconsider it.
 
 See
 
 
 *1263
 

 White v. Murtha,
 
 377 F.2d 428, 432 (5th Cir.1967) (court of appeals must follow ruling in prior appeal “unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.”)
 

 [3]
 

 . The lack of intent of the parties to waive personal jurisdiction at the time the stipulation was entered is further confirmed by the following order entered shortly thereafter by the district court and approved by plaintiffs’ counsel:
 

 This cause having come on this day to be heard on the Motion of defendant for an additional thirty (30) days time in which to plead
 
 without waiving any of its defenses pursuant to the Federal Rules of Civil Procedure and especially any of its Rule 12 defenses,
 
 and the Court, being fully advised in the premises, and it being noted attorney for the plaintiff has approved said Motion for Enlargement of Time for defendant, finds said Motion is well taken and same should be and is hereby approved.
 

 Record at 108 (emphasis added).
 

 [4]
 

 . Miss.Code Ann. § 13-3-57 (Supp.1982):
 

 Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their or its agent, servant or employee.
 

 [5]
 

 . The relevant portions of Rule 4 are as follows:
 

 (d) Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: (1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.
 

 (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.
 

 (7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.
 

 (e) Same: Service Upon Party Not Inhabitant of or Found Within State. Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances
 
 *1266
 
 and in the manner prescribed in the statute or rule.
 

 [6]
 

 . These cases applied a federal amenability standard even in suits like
 
 Burstein
 
 and the present case, which are based only in part on a federal question, also raising claims in diversity.
 
 E.g. Lone Star Package Car Co. v. Baltimore & O.R. Co.,
 
 212 F.2d 147 (5th Cir.1954) (discussed infra).
 

 [7]
 

 . Professors Wright and Miller also resolve any ambiguities in favor of this interpretation:
 

 
 *1267
 
 When service is made under Rule 4(e) on a person not an inhabitant of or found within the state, it is unclear whether state or federal law governs amenability. It has been held that the phrase “under the circumstances,” which was inserted in Rule 4(e) in 1963 regarding service under state statutes, concerns amenability to suit as well as the other circumstances relating to process and thus provides some specific evidence that the state test should control when service is made under Rule 4(e). This view seems particularly appropriate when a state statute relating to quasi-in-rem jurisdiction is used since the Advisory Committee Notes to the 1963 amendment seem to indicate a clear intent to conform to state practice in that context. It also should be pointed out that the word “circumstances” does not refer to the nature of the claim but rather to the nature of the acts giving rise to the claim. Thus, service in the manner provided by state law may be made under Rule 4(e) even in cases exclusively within the federal question, rather than the diversity, jurisdiction of the federal courts.
 

 On balance, then, it would seem that state law always should govern amenability when a state statute is used pursuant to Rule 4(e). Although the opposite result has some appeal in that it permits effectuation of federal interests in a broader range of suits, it is inconsistent with the apparent intent of the draftsmen of Rule 4(e) to use state provisions for service in order to permit the federal courts in a state to hear those cases that could be brought in the state’s own courts when a basis for asserting federal subject matter jurisdiction exists.
 

 4 C. Wright & A. Miller, Federal Practice
 
 &
 
 Procedure § 1075 at 312-13 (1969 & Supp. 1982) (footnotes omitted, collecting cases). For an able analysis by a district court in our circuit reaching the same conclusion, see
 
 Navarro v. Sedco, Inc.,
 
 449 F.Supp. 1355, 1357-58 n. 1 (S.D.Tex.1978) (disapproved on an unrelated state law ground in
 
 Prejean v. Sonatrach, Inc.,
 
 652 F.2d 1260, 1267 (5th Cir.1981)).
 

 [8]
 

 .
 
 Genesis
 
 11:7 (New Jerusalem): “Come, let us go down and confuse their language on the spot so that they can no longer understand one another.”
 
 Cf. Metromedia, Inc. v. City of San Diego,
 
 453 U.S. 490, 569, 101 S.Ct. 2882, 2924, 69 L.Ed.2d 800 (1981) (Rehnquist, J., dissenting).
 

 [9]
 

 .
 
 Terry
 
 and Burstein appear indistinguishable in two critical respects. First, both involved service of process upon an out-of-state defendant. Terry, 658 F.2d at 400 (in-state plaintiff served out-of-state defendant by mail). Second, both cases involved a federal question arising from a statute that is silent as to service of process. Burstein, 693 F.2d at 514 (42 U.S. C.1983); Terry, 658 F.2d at 402 (Jones Act). Thus, Terry would have come out differently under Burstein’s theory: Rule 4(e) would have applied, requiring a state, not a federal, amenability standard. In Burstein the similarity of facts in these two cases was overlooked by focusing upon only one of two complaints filed in
 
 Terry.
 
 A third-party complaint was filed upon the
 
 Terry
 
 defendant’s in-state employee, thus arguably falling outside Rule 4(e).
 
 See Burstein,
 
 693 F.2d at 516. The same cannot be said, however, with respect to service of the plaintiffs original complaint by mail to the defendant’s out-of-state headquarters. With respect to it,
 
 Terry
 
 is like
 
 Burstein.
 

 [10]
 

 . Though couched in terms of due process, Woolsey may be understood to argue on brief that in
 
 Mladinich v. Kohn,
 
 250 Miss. 138, 164 So.2d 785, 790 (Miss.1964), the Mississippi Supreme Court engrafted certain limits upon the reach of Mississippi’s long-arm statute, such as a requirement that the cause of action arise from the defendant’s contacts with the forum. Though this proposition perhaps was once true, it is no longer so.
 
 Temco
 
 held that the 1964 addition of the tort basis for long-arm jurisdiction was intended to broaden the scope of the statute beyond the limits previously recognized in
 
 Mladinich
 
 and cases like it. 252 So.2d at 215. The Mississippi Supreme Court recently reaffirmed this view.
 
 Mandel v. James Graham Brown Foundation, Inc.,
 
 375 So.2d at 1018; see
 
 Edwards v. Associated Press,
 
 512 F.2d 258, 262 (5th Cir.1975);
 
 cf. Aycock v. Louisiana Aircraft Co.,
 
 617 F.2d 432 (5th Cir.1980)
 
 (Mladinich
 
 limitations are inapplicable to “doing business” section of long-arm statute),
 
 cert. denied,
 
 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 343 (1981).
 
 But see Washington v.
 
 
 *1270
 

 Norton Mfg., Inc.,
 
 588 F.2d 441 (5th Cir.) (decided before
 
 Mandel, supra,
 
 applying the
 
 Mladinich
 
 test),
 
 cert. denied,
 
 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979).
 

 [11]
 

 .
 
 See, e.g. World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 291-93, 100 S.Ct. 559, 564-65, 62 L.Ed.2d 490 (1980);
 
 Shaffer v. Heffner,
 
 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977).
 

 [12]
 

 . “Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.”
 
 Marine Midland Bank, N.A. v. Miller,
 
 664 F.2d 899, 904 (2d Cir.1981),
 
 cited in Brown, supra.
 
 The trial court has considerable leeway to decide at what stage of the proceedings plaintiffs ultimate showing must be made.
 
 Id.; see generally Data Disc, Inc., supra,
 
 557 F.2d at 1285-86 & n. 2.
 

 [13]
 

 . Woolsey’s affidavit also asserted that these sales constituted less than one-half of one percent of its total New Orleans sales. We have recognized that a defendant’s contacts with a forum may be so
 
 de minimis
 
 and insubstantial that due process will not countenance assertion of personal jurisdiction.
 
 Mississippi Interstate Express, Inc. v. Transpo, Inc.,
 
 681 F.2d at 1006;
 
 Prejean v. Sonatrach, Inc.,
 
 652 F.2d 1260, 1269 (5th Cir.1981) (overruled in part on unrelated state law grounds in
 
 Placid Investments, Ltd. v. Girard First Bank,
 
 689 F.2d 1218 (5th Cir.1982)). However, this does not affect the plaintiffs’ prima facie showing that Woolsey “purposefully availed” itself of the benefits of Mississippi by shipping its goods there.
 
 See
 
 text,
 
 infra.
 

 Woolsey’s affidavit does not reveal the volume or number of its shipments to Mississippi. Even if fully credited, the affidavit establishes only that Woolsey’s shipments to Mississippi were minimal in comparison to its New Orleans sales, not that they were insubstantial in and of themselves. If it is true that Woolsey’s shipments to Mississippi are so
 
 de minimis
 
 that exercise of jurisdiction would not comport with the requirements of the due process clause, Woolsey will have an opportunity to so demonstrate at trial or a preliminary hearing as the district court, in its discretion, may determine.
 
 See
 
 note 12,
 
 supra.
 

 [14]
 

 . That, of course, was the jurisdictional theory rejected in
 
 World-Wide Volkswagen,
 
 444 U.S. at 295-99, 100 S.Ct. at 566-68.
 

 [15]
 

 . In evaluating plaintiffs’ prima facie showing on this issue, we have not found it necessary to consider other facts bearing upon Woolsey’s contacts with Mississippi, which are inadequately developed in the record. However, we do not mean thereby to suggest that such facts may not be considered in deciding whether plaintiffs have carried their ultimate burden of establishing personal jurisdiction.
 
 See
 
 note 12,
 
 supra.
 
 For example, plaintiffs introduced affi
 
 *1272
 
 davits stating that two retail stores in Mississippi carry Woolsey paint; Woolsey responded that this paint was obtained from independent Louisiana distributors, not from Woolsey. Whether the activities of these distributors can be attributed to Woolsey will depend on Wool-sey’s awareness of the activities.
 
 See Oswalt v. Scripto, Inc.,
 
 616 F.2d 191 (5th Cir.1980) (defendant should have known of distributors’ sales in forum state due to nationwide distribution arrangement);
 
 Coulter v. Sears, Roebuck & Co.,
 
 426 F.2d 1315 (5th Cir.1970) (actual knowledge of distributors’ sales in forum state). By placing our decision on narrower grounds, we imply no views on this or other fact questions raised by the parties’ affidavits and depositions but not expressly relied upon in this opinion.
 

 [16]
 

 . Our decision that personal jurisdiction is appropriate under the long-arm statute and the fourteenth amendment, though incorporating a constitutional issue, is nevertheless a statutory decision. It is required by Rule 4(e).
 
 Burstein,
 
 693 F.2d at 523 n. 16. Accordingly, there remains a further question in this case: does assertion of jurisdiction comport with the due process clause of the
 
 fifth
 
 amendment that binds federal courts independent of any statute or rule? In some cases, circumstances may be such that the requirements of the two due process clauses may diverge.
 
 See, e.g., FTC v. Jim Walter Corp.,
 
 651 F.2d 251 (5th Cir.1981) (where federal statute provides nationwide service of process, fifth amendment requires minimum contacts only with the United States, not the forum state).
 
 But see Burstein,
 
 693 F.2d at 515-16 n. 8 (questioning vitality of
 
 Jim Walter
 
 after
 
 Insurance Corp. of Ireland,
 
 supra). However, we perceive no such circumstances here. For the same reasons that assertion of jurisdiction over Woolsey does not offend fourteenth amendment due process, we conclude that the fifth amendment is satisfied.
 
 See Time, Inc. v. Manning, supra,
 
 366 F.2d at 694.