Marcus IRVING, Jr. and Frankie Irving, Plaintiffs–Appellants,

v.

OWENS–CORNING FIBERGLAS CORP., et al., Defendants,

Jugometal Enterprise for Import and Export of Ores and Metals, Defendant–Appellee.

No. 87–6272.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1989.

Brent M. Rosenthal, Dallas, Tex., for plaintiffs-appellants.

John H. Boswell, A. David Carlson, Holly H. Williamson, Houston, Tex., for defendant-appellee.

George C. Cochran, Professor of Law, University of Mississippi, University, Miss., Bernard Jaffe, New York City, for Jugometal Enterprises.

Before JOHNSON, DAVIS and JONES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants Marcus Irving, Jr. and Frankie Irving appeal the district court's order dismissing their products liability suit against Jugometal Enterprise for Import and Export of Ores and Metals (Jugometal) for lack of personal jurisdiction. Because we conclude that the district court did have personal jurisdiction over Jugometal, we reverse and remand.

## I.

This is one of 106 products liability actions pending in the Southern District of Texas that stem from employment-related exposure to asbestos at the Uvalde Rock Asphalt Company (Uvalde) in Houston. The various plaintiffs have sued twenty-one companies, including Jugometal, alleged to have supplied raw asbestos to Uvalde from the 1950's through the early 1970's.

Marcus Irving, a former Uvalde employee, sued Jugometal under strict liability, negligence and breach of warranty theories for respiratory injuries allegedly linked to his asbestos exposure at Uvalde. Jugometal, a Yugoslavian company, participated in supplying about 5,000 metric tons of Yugoslavian asbestos to Uvalde each year between 1956 and 1970. These purchases represented all of Uvalde's asbestos supply during this time. The supply chain involved four players: (1) Stragari Mine in Yugoslavia, which mined the raw asbestos; (2) Jugometal, a licensed trading company that introduced the asbestos to America; (3) Huxley Development Company, an American broker that bought the asbestos from Jugometal; and (4) Uvalde, who bought the asbestos from Huxley.

Yugoslavian trade laws prohibited Stragari from selling the asbestos to foreign countries; Jugometal, which had the necessary export licenses, sold the asbestos to Huxley. This important fact is established by the only surviving contract from this supply chain, a contract between Huxley and Jugometal dated November 24, 1959; it identifies Jugometal as the "seller" and Huxley as the "buyer" of the asbestos. No evidence indicates that Jugometal, which was not qualified to do business in Texas and solicited no asbestos sales directly in Texas, knew Uvalde was the ultimate purchaser. Jugometal kept no offices, employees or property in Texas.

Jugometal shipped asbestos to the Port of Houston roughly every two months during this fifteen-year relationship. The Jugometal–Huxley contract required Jugometal to ship the asbestos C.I.F. in jute bags labelled "Houston–Huxley." Huxley and Jugometal agreed to split the cost of testing asbestos samples from each shipment at a Houston laboratory. The bags themselves were cleaned in Houston before being returned to Jugometal; Huxley paid the cleaning fee and then deducted the charges from its payments to Jugometal using "debit notes" that identified Houston Bag and Burlap as the cleaning company. According to deposition testimony, Jugometal and Stragari agreed that Jugometal would store the asbestos, ship it, prepare invoices for Huxley, collect on Huxley's letters of credit and transfer the payments to Stragari after deducting a one percent commission.

Jugometal filed a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(2), after which the parties conducted additional discovery on the issue. A special master appointed by the district court recommended that the court grant Jugometal's motion to dismiss; the court adopted the special master's recommendation and dismissed each of the 106 actions against Jugometal for lack of personal jurisdiction. The district court entered judgment under Rule 54(b) in this case and stayed the rest pending this appeal by the Irvings.

## II.

The Irvings bear the burden of establishing personal jurisdiction over Jugometal. But they need only present a prima facie case for personal jurisdiction at this point because Jugometal predicated its motion to the district court solely on affidavits and depositions; the court did not hold an evidentiary hearing. *DeMelo v. Toche Ma-*

*rine, Inc.,* 711 F.2d 1260, 1270–71 (5th Cir. 1983); *see also Data Disc, Inc. v. Systems Technology Assoc.,* 557 F.2d 1280, 1284–86 (9th Cir.1977). We conclude that the Irvings have established the prima facie case for personal jurisdiction over Jugometal in the Southern District of Texas.

To establish jurisdiction in a diversity case such as this the plaintiff must satisfy both (1) the forum state's long-arm statute; and (2) the fourteenth amendment's due process requirements. *DeMelo,* 711 F.2d at 1264. These two steps collapse into one for our purposes because the Texas Supreme Court has established that the Texas long-arm statute, Tex.Civ.Prac. & Rem. Code § 17.042 (Vernon 1986), "reaches as far as the federal constitutional requirements of due process will permit." *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 200 (Tex.1985).

The due process clause permits a district court to exercise personal jurisdiction over nonresident defendants when (1) they have sufficient "minimum contacts" with the forum; and (2) the exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co., v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). The minimum contacts must arise from actions by which the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *see Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The district court exercises specific jurisdiction over actions related to the defendant's contacts, provided the contact sprang from the defendant's purposeful conduct rather than the plaintiff's unilateral activities. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 566–67, 62 L.Ed. 2d 490 (1980); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987). In describing the degree of purposeful conduct necessary to satisfy the due pro-

cess clause's minimum contacts prong, the Supreme Court has determined that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567. The Court in that case rejected an argument that the plaintiffs' unilateral—and arguably foreseeable—action in driving their car into Oklahoma established personal jurisdiction there over the New York car dealer and the east coast wholesaler who sold it. *Id.* at 295–96, 100 S.Ct. at 566–67. The Court stressed that foreseeability for personal jurisdiction purposes turns on whether "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

In *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1988), the Supreme Court's most recent statement on personal jurisdiction, four justices favored a narrow interpretation of the stream of commerce doctrine in a case ultimately decided under the "fair play and substantial justice" prong of the due process test. Justice O'Connor's plurality opinion disagreed with one approach to stream of commerce, which she associated with this court's opinion in *Bean Dredging Corp. v. Dredge Technology,* 744 F.2d 1081 (5th Cir.1984), in which "mere foreseeability ... [establishes] personal jurisdiction if the defendant's product made its way into the forum State while still in the stream of commerce." *Asahi,* 480 U.S. at 110, 107 S.Ct. at 1032, 94 L.Ed.2d at 103. In contrast, Justice O'Connor advocated a requirement of "additional conduct" by the defendant to support personal jurisdiction under the stream of commerce theory. *Id.* 480 U.S. at 112, 107 S.Ct. at 1033, 94 L.Ed. 2d at 104.

■ Nonetheless an equal number of justices, while concurring with the plurality's analysis under the due process test's second prong, refused to require a showing

of "additional conduct" under the stream of commerce doctrine. *Id.* at 116–121, 107 S.Ct. at 1035–1038, 94 L.Ed.2d at 107–110. Because the Court's splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue, we continue to gauge Jugometal's contacts with Texas by the stream of commerce standard as described in *World–Wide Volkswagen* and embraced in this circuit. *See Bean Dredging*, 744 F.2d at 1083–84; *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 198–99 (5th Cir.1980); *Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315, 1318 (5th Cir. 1970). *But cf. Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228, 1234 (5th Cir. 1973) (dictum suggests that "sufficient other contracts" necessary to support personal jurisdiction). To borrow *World–Wide Volkswagen*'s phrase, Jugometal reasonably should have anticipated being haled into a Texas court given its contacts with that forum.

The parties here argue at length about whether Jugometal is more properly characterized as an asbestos seller, wholesaler, broker, agent or some other variety of middleman in this distribution chain. The label attached to Jugometal's role in the distribution scheme is not the critical question. We look instead to Jugometal's essential contention that its role in this chain was too minor to vest the district court with personal jurisdiction under the stream of commerce doctrine.

Jugometal's effort to downplay its role does not persuade us. Jugometal argues in effect that it is an exporter for purposes of Yugoslavian law but not United States law. Given the Yugoslavian trade restrictions, Stragari could not export the asbestos. Jugometal took on that task, and in doing so held itself out as the seller in the Jugometal–Huxley contract. Deposition testimony from Huxley's former vice president established that Jugometal itself conveyed the asbestos to a freight forwarder for shipment to Houston. Jugometal shared the cost of quality-control testing by a Houston lab and received Huxley's debits for the bag-cleaning charges of another Houston company; moreover, Jugometal accepted payments for the asbestos and stored it. Without implying any conclusions about the importance of Jugometal's role for the merits of this product liability action, we conclude that these actions satisfy the due process test's minimum contacts prong.

Jugometal's ignorance of Uvalde's identity does not defeat the exercise of jurisdiction in Texas. Personal jurisdiction does not require certain knowledge of the user's identity. We have noted that even a nonresident defendant's out-of-state activities can establish the necessary minimum contacts if those activities have " 'reasonably foreseeable consequences' " within the forum state. *Bean Dredging*, 744 F.2d at 1083 (quoting *Quasha v. Shale Devel. Corp.*, 667 F.2d 483, 488 (5th Cir.1982)).

In *Bean Dredging*, this court held that a component manufacturer who was based in Washington state and injected its steel castings into the stream of commerce—including two castings used in construction of a defective dredge in Louisiana—had established sufficient contacts with Louisiana to permit personal jurisdiction there. The component manufacturer sold the steel castings to a California manufacturer, which incorporated the castings in cylinders that it ultimately sold to a Louisiana shipyard. *Bean Dredging*, 744 F.2d at 1085. The component manufacturer never (1) knew where these two castings were used; (2) knew the end product into which the castings were incorporated; (3) sold directly to any Louisiana company; (4) solicited business in Louisiana; or (5) owned property in Louisiana. *Id.* at 1082. The component manufacturer's president did acknowledge, however, that his company's products could wind up anywhere in the United States once they entered the stream of commerce. *Id.*

In concluding that use of the components in Louisiana established sufficient minimum contacts for personal jurisdiction there, we noted that the Washington component manufacturer sought to reach as broad a market as possible. *Id.* at 1085. We also stressed that the component manufacturer placed no limit on the states in which its castings could be sold and used.

*Id.* See also *Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d 1355, 1358 (9th Cir. 1983), *opinion withdrawn in part on other grounds sub nom. Hedrick v. Pine Oak Shipping, S.A.,* 733 F.2d 1335 (9th Cir. 1984) (defendant manufacturer performed an act related to the forum, Oregon, "when it produced a splice that it knew was destined for ocean-going vessels serving United States ports, including those of Oregon."); *Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wine Distributors' Pty. Ltd.,* 647 F.2d 200, 203 (D.C.Cir.1981) (personal jurisdiction existed in Washington D.C. over Australian defendants who "arranged for introduction of their wine into the United States stream of commerce with the expectation ... that their products will be shelved and sold at numerous local outlets in diverse parts of the country.") 2 Moore's Federal Practice 4.41–1[4.1] (1987).

Similarly, Jugometal authorized Huxley to drum up American buyers for Yugoslavian asbestos throughout the United States. Although this effort produced only one buyer, Houston-based Uvalde, Jugometal nonetheless derived economic benefits from it and placed no geographic limits on Huxley's efforts. Moreover, Jugometal's contacts with Houston gave Jugometal more reason to foresee that its product was being sold in the forum state than the component manufacturer in *Bean Dredging.*

The *Bean Dredging* manufacturer knew only that its product could end up anywhere in the United States. Jugometal's fifteen-year history of bulk asbestos shipments to Houston, ties to the Houston testing laboratory, and knowledge that the shipping bags were cleaned in Houston all pointed to a user in Texas or its vicinity. Huxley underscored the importance of shipping to Houston when it billed Jugometal for the cost of forwarding a shipment mistakenly delivered to New Orleans. The scope of Jugometal's and Huxley's marketing effort, combined with Jugometal's explicit ties to Houston, constitute delivery of the asbestos into the stream of commerce such that Jugometal reasonably should have anticipated use of its product in Texas, which could have resulted in its being haled into court there.

Turning to the due process test's second prong, we conclude that the exercise of personal jurisdiction here does not offend traditional notions of fair play and substantial justice. In determining this fundamental fairness issue we must examine the (1) defendant's burden; (2) forum state's interests; (3) plaintiff's interest in convenient and effective relief; (4) judicial system's interest in efficient resolution of controversies; and (5) states' shared interest in furthering fundamental social policies. *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1033, 94 L.Ed. 2d at 104; *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564.

The latter four factors all point to the exercise of personal jurisdiction over Jugometal, given that this litigation involves 106 consolidated asbestos suits against twenty-one defendants for alleged injuries arising in Texas and linked to the asbestos Jugometal distributed. Thus, Texas constitutes the most convenient and efficient forum in which to try these cases. Nor has Jugometal indentified any conflict between the interests of Texas and other states that would flow from the exercise of personal jurisdiction here.

Jugometal understandably stresses that it would carry a heavy burden as a Yugoslavian company defending these lawsuits in Texas. It also points to the Supreme Court's admonishment to give "significant weight" to the unique burdens placed on parties who face litigation in a foreign legal system. *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1034, 94 L.Ed.2d at 105. But the Court also stated that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum will justify even the serious burdens placed on the alien defendant." *Id.* at 114–15, 107 S.Ct. at 1033–34, 94 L.Ed.2d at 105–06. We conclude that this is such a case.

■ The plaintiff in *Asahi,* a Taiwanese corporation that manufactured tire tubes, sought indemnity from its valve supplier, a Japanese corporation, in a California court. *Id.* at 105, 107 S.Ct. at 1027, 94

L.Ed. 201 at 100. The tube manufacturer already had settled products liability claims filed against it in California court by a California resident; only the indemnity action between one Japanese corporation and one Taiwanese corporation remained. *Id.* With this posture in mind, the Court noted that neither the forum nor the parties had a strong interest in resolving this dispute in California. *Id.* at 114, 107 S.Ct. at 1034, 94 L.Ed.2d at 106. This asbestos litigation, in contrast, involves Texas plaintiffs using a local forum to pursue compensation for alleged injuries that occurred in Texas. Under these facts we cannot say that the exercise of personal jurisdiction in the Southern District of Texas would offend traditional notions of fair play and substantial justice.

The district court's order is reversed and the case remanded for further proceedings.

REVERSED AND REMANDED.